## TULLIS v. UNITED CARBON CO.
### No. 4247.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

J. Norman Coon, of Monroe, for appellant.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

DREW, J.

This suit is for compensation under Act No. 20 of 1914, and amendments thereto, for the death of Ezra Tullis. The suit is filed by his surviving widow, independently and on behalf of their minor children. She prays for weekly compensation in the amount of 65 per cent. of his weekly wage for a period of 300 weeks; for medical bills and for funeral expenses.

There was a denial of liability on the part of defendant.

The lower court rejected the demands of plaintiff, and she has appealed.

On October 8, 1930, deceased was injured while working for defendant as a common laborer, assisting in hauling iron pipe to be used by defendant in the operation of a gas well. He suffered severe shock, hemorrhage, laceration of the right wrist, a compound fracture of the external malleolus, with dislocation of the ankle, and general contusions. The injuries, other than the fracture, soon healed. He was treated for the first five days by Dr. W. V. Garnier, and, from that time until his discharge on March 23, 1931, by Dr. McHenry, the physician employed by the defendant company.

Deceased was incapacitated for work from the date of the injury until his death, which occurred on April 9, 1931. On March 9, 1931, just two weeks before he was discharged by Dr. McHenry as being well, in so far as the fracture of the leg was concerned, deceased consulted Dr. French, who made an examination of him, with the exception of the fractured leg, and found deceased to be suffering with acute nephritis and swollen all over. He was so edemic that, if one should thrust his finger against his body, an imprint would be left. Dr. French continued to treat deceased for nephritis until March 31st, when he developed influenza and, a few days later, pneumonia, and died on April 9, 1931. Dr. French treated him until April 6th, and, from that time until his death, deceased was under the care of Dr. Pierce.

The issue in the case is whether the injury to deceased on October 8, 1930, had any causal connection with his death on April 9, 1931. Plaintiff attempts to connect the injury with the death by the following causal chain: That deceased was apparently a robust healthy man prior to the injury; that he received a compound fracture of the leg on October 8, 1930, and that the wound became infected, causing nephritis, which in turn lowered his vitality, causing a weakened condition which rendered him susceptible to other diseases; and that, as a result of his lowered vitality, he developed influenza, which developed into pneumonia, and that his death resulted from a combination of nephritis, influenza, and pneumonia.

Defendant contends that the wound on the leg was never infected; that its healing progress was normal and natural until a complete recovery on March 23, 1931, when deceased was discharged by defendant's doctor; and further contends that, if the court should find that the wound to the leg was infected and caused nephritis, there was no causal connection between the nephritis and the epidemic influenza, which resulted in pneumonia and death. The following facts are established to a certainty: That deceased was injured on October 8, 1930, receiving a compound fracture of the small bone of the leg, near the ankle; that on March 9, 1931, two weeks before he was discharged by defendant's doctor, he had developed nephritis and it was in an advanced stage; that he was in a weakened and run-down condition at that time; and that on March 30, 1931, developed or contracted influenza, and several days later, the influenza went into pneumonia, and his resulting death on April 9, 1931.

The possibilities are that the wound became infected and this infection was carried to the kidneys, causing them to break down, resulting in nephritis, and that the nephritis lowered his vitality and power of resisting other diseases; and that, due to his weakened condition, he contracted influenza, which he would not have otherwise contracted; and that the influenza caused pneumonia, from which he died.

However, courts cannot decide cases on possibilities, even though it be a compensation case in which we are always most liberal in construing the law, as well as the facts. It is the duty of the plaintiff in a compensation suit to make out his case with a preponderance of testimony, and with the same legal certainty as is required in all other civil actions. It is therefore incumbent upon the plaintiff in this case to prove by a preponderance of testimony the possibilities above alleged and especially so, in this case, due to the several different causal links alleged connecting the accident with the death of the deceased.

Plaintiff contends that the evidence in this case shows that the wound of deceased became infected soon after the accident, and that it exuded pus for about thirty days. The testimony offered to this effect consists of the wife of the deceased. two of his brothers, and one or two neighbors. They all testified that they were present on different occasions when his wife would dress the wound. She testified that it was necessary to dress it once or twice a day, due to the pus formation, removing the gauze and replacing fresh gauze; that the pus was very noticeable, and one of the witnesses stated that the wound would throw off enough pus to soak through a pillow in three hours. It is plain that most,

if not all, of plaintiff's witnesses exaggerated the condition of the deceased, even though the wound was infected. Dr. McHenry was treating deceased all the time in which plaintiff's witnesses testified as to the pus coming from his wound. He is very emphatic in his denial that there was ever any infection of the wound. Dr. Garnier, who treated deceased for the first five days after the accident, swears that when the deceased left his charge there was no infection of the wound.

The medical testimony discloses that a fracture such as was received by the deceased would, under ordinary circumstances, completely heal in about six months' time, provided there was no infection or other complications. It is to be noted that Dr. McHenry discharged deceased in exactly six months and fifteen days after the accident, as well, in so far as the fracture was concerned.

Plaintiff urges that, since Dr. McHenry stated that, at the time he discharged deceased and before, there was some swelling in the leg or ankle at or near the point of fracture, it conclusively proves there was some infection, for the reason that, without some infection or inflammation, there would not have been any swelling. The point is well taken, if it were not for the fact that plaintiff's witness, Dr. French, conclusively showed that two weeks before the date of discharge deceased was swollen all over, his arms, legs, chest, and all parts of his body, due to nephritis. No one of the doctors who treated deceased after he was discharged by Dr. McHenry was ever called upon to examine the injured leg—a further corroboration, we think, that the fracture had healed and was well at the time of the discharge. If it had been infected, the evidence shows that the fracture would not have healed within that length of time.

■ The lower court undoubtedly accepted the testimony of defendant's witnesses that the wound was never infected, and we do not feel justified, under the testimony, in saying that the lower court was in error in that respect. It was no doubt influenced to some extent by the gross exaggeration of some of plaintiff's witnesses as to the quantity of pus discharging from the wound, which was directly in conflict with the testimony of other witnesses for plaintiff.

Due to the number of personal injury cases and compensation cases, we daily delve into medical testimony, and are thoroughly familiar with the fact that the medical science has not yet arrived at that perfect state where the exact cause of all diseases can be shown to a certainty. Some of our most eminent radiologists will differ on the reading of an X-ray picture, and our most eminent physicians differ as to the condition of a man, although examining him at the same time. It often occurs that very reputable doctors will swear that a man is a malingerer and the same number of equally reputable doctors will swear that he is permanently disabled. Oftentimes such a conflict of opinions gives rise to severe charges being made against the members of the medical fraternity, but we are convinced that such charges are unjust, and that the different opinions, to which the doctors are willing to swear as being facts, are due to the yet imperfection of the science. Being of this opinion, we realize that we cannot expect that exactness and certainty of testimony to prove a cause of a disease as we can and do in matters that are obvious to the eye of the average layman. We therefore necessarily are forced to accept the opinion of doctors, based upon that which is most probable, in connection with the outward symptoms.

Under the testimony in this case, if it had been shown that the wound of the deceased was infected and discharged pus, we would be justified in holding that this infection was the cause of nephritis. No other infection has been shown in the teeth, tonsils, or other parts of the body, although the medical testimony is that the different causes of nephritis are too numerous to be named. The medical testimony shows that, although a wound may heal perfectly from an outward appearance, there may still be infection, and that a place of infection no larger than a pinhead could be sufficient to cause nephritis. However, that is only one of the possibilities in this case, and not such a strong probability, based on other obvious facts, as to justify us in so holding, especially since plaintiff has contented herself with only showing that deceased was apparently a well and able-bodied man prior to the accident. She has not attempted to disprove in particular the probability of there being other causes for nephritis.

Plaintiff has failed to establish with that legal certainty required in such cases that the wound of deceased became infected and that the infection caused nephritis. She has therefore failed to establish the first causal link in his alleged causal chain linking the accident with the death of the deceased.

It is unnecessary to discuss the other alleged causal links, namely, that nephritis caused the lowered vitality, which in turn caused deceased to contract influenza; that influenza caused pneumonia; and that the pneumonia caused death.

The judgment of the lower court is correct, and it is therefore affirmed.