## JOHNSON v. JOHN J. KILCOYNE, Inc., et al.

### No. 5616.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

W. H. Todd, Jr., of Bastrop, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellees.

HAMITER, Judge.

The allegation is made by plaintiff in his petition herein that he was injured through an accident while in the performance and scope of his employment with John J. Kilcoyne, Inc.· He specifically alleges that, "* * * in said accident he received personal injuries to both feet and ankles and particularly breaking down the arches in both feet and injuring the ligaments and muscles in both legs, and as a result of said injuries received in the accident aforesaid your petitioner can walk only with difficulty and suffers extreme pain when he stands on his feet at all and is totally and permanently disabled, and has been totally and permanently disabled since the date of the accident and injuries aforesaid."

The suit was instituted under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, as amended, against said employer and its compensation insurer, Maryland Casualty Company. A solidary judgment is prayed for awarding compensation of $20 per week for a maximum period of 400 weeks, and for the further sum of $250 as medical expenses.

In their joint answer defendants deny all allegations of fact of the petition which tend to show liability on their part, and then aver: "Further answering, defendants specifically deny that plaintiff is suffering from any disability whatsoever but alternatively, and in the alternative only, avers that if plaintiff be shown to be now suffering from any injury or disability whatsoever that said injury or disability was incurred and suffered at a time prior to the date alleged in plaintiff's petition, or is the result of a physical condition existing prior to the date of the alleged accident, not growing out of, not being aggravated by or in any way connected therewith, and further, that if it be shown that plaintiff be suffering from any injury or disability that said injury or disability was incurred and suffered at a date prior to the employment of plaintiff herein by John J. Kilcoyne, Inc., and defendants specifically deny that plaintiff is now suffering from any such injury incurred in scope of his employment with John J. Kilcoyne, Inc., as would render him totally and permanently incapacitated from doing and performing labor or service sufficient to gain a livelihood."

At the conclusion of the trial of the case on its merits, the district judge ordered a rejection of plaintiff's demands at his cost. The latter appealed devolutively to this court.

The record discloses that during the year of 1936, John J. Kilcoyne, Inc., was engag-

ed in the construction of a road in the northern portion of Morehouse parish, La. Numerous persons were employed on the project, all of whom were under the control and supervision of a general foreman named John Cater. Plaintiff was one of these employees, his duties being to give directions and assist in the driving of piling for the necessary bridge work. He possessed the title of "straw boss."

On June 22, 1936, while plaintiff and other employees were performing the task of setting piling for a bridge, the driver on which plaintiff was standing began to turn over or fall and he was compelled to jump to the ground, a distance variously estimated at from 10 to 15 feet. It is this leap which the compensation claimant contends caused his alleged injuries and which forms the basis of this suit.

Work in connection with his pile driving activities was thereafter performed by plaintiff until July 11, 1936. The bridge at that time was completed with the exception of its painting. According to plaintiff he quit work then to visit his sister who was ill. It is the testimony of the general foreman that the duties of his job were terminated on the named date.

In October or November of 1936, plaintiff obtained employment with the village of Mer Rouge, La., and for a period of nine days, which was the duration of this' job, he operated a street-grading machine that was pulled by a tractor. He labored ten hours per day on the work.

No notice or complaint relative to the asserted accident and resultant injuries was given by plaintiff to any of his superiors or to either of defendants until November 25, 1936, or more than five months after the leap occurred. On that date, his attorney addressed a letter to the defendant employer demanding payment of compensation.

The primary question presented by the appeal is: Did plaintiff experience a disability which resulted from or had a causal connection with the aforedescribed accident?

Obviously, the relevant and true facts of the case are determinative of the correct decision of the issue; and it might be here observed that the testimony in the record, both lay and medical, is conflicting beyond reconciliation. No benefit will be afforded to anyone by a detailed discussion of the mass of contradictory state-ments furnished, which we have carefully studied, and only a summary of the evidence will herein be given. ·

Plaintiff and other witnesses appearing in his behalf, including several fellow employees at the time of the accident, testified that prior to the jump he was in sound physical condition and labored along with his coworkers on the bridge construction project. They stated, however, that subsequent thereto, his feet were swollen and he did no heavy work; that he stayed on the bridge job until its completion, but only gave instructions to the other employees; and that he walked with a limp and continuously complained of pain and suffering.

In opposition to the proof mentioned in the preceding paragraph is the testimony of many persons who were well acquainted with plaintiff and saw and were with him on numerous occasions after the accident. These were never informed and had no knowledge of the claimed accident and injury, noticed no disability experienced by plaintiff, and at all times viewed him as an able-bodied and normal person. Included in this group was the general foreman on the project who saw him on the bridge job until July 11, 1936, and thereafter at other places several times, and who on at least one occasion made a similar leap without injury to himself; the town marshal of Mer Rouge, who supervised the grading work that plaintiff performed in that town during his nine-day period of employment there, saw him daily then and frequently thereafter, noticed that his work was performed properly and efficiently, and accompanied him on walks on several instances; a neighbor of plaintiff and fellow servant on the bridge job who often traveled to and from that project with him in the same automobile, a total distance of approximately 60 miles; and another neighbor who on many· occasions noticed plaintiff as he walked along the road, watched him working on automobiles, and observed his unloading of heavy materials from a truck.

The testimony of the medical experts provides contradictions equally as glaring and severe. The physicians testifying in plaintiff's behalf state that there is a flattening of the arches in both feet brought about by the tearing or injuring of the ligaments and tendons supporting such arches, and also some injury to his ankles; that there was and is much swelling of the

feet; and that his condition is totally and permanently disabling and resulted from the aforedescribed leap. The disability which they found is not ascribed to any disease possessed by plaintiff which was aggravated or accelerated by the accident.

The experts appearing for defendants are positive that the bones forming the arches in plaintiff's feet, together with the accompanying tendons and ligaments, and also the bones leading to and supporting the ankles, are in every respect normal and disclose no injuries. They emphatically deny that the compensation claimant possesses flat feet as described by the opposing members of their profession, and that he is disabled as a result of the accident.

When examining plaintiff on or about June 29, 1937, one of defendants' medical experts found that he "had a very slight amount of swelling, particularly in the front part of the feet, and when he stood up there was a tendency toward discoloration in the front part of the feet, that being evidence of some vascular disturbance." This witness was questioned regarding the effect of syphilis, which disease the evidence indicates was in plaintiff's blood, on the veins of the body and also on those of the legs and feet. His reply was: "Syphilis in attacking the vascular system causes the condition which is technically speaking endaortitis which results in a narrowing of the size of the blood vessels and leads to deficient circulation by permitting a small amount of blood to flow in the extremities. A deficient amount of blood leads in turn to pain, swelling and other evidences of vascular or blood vessel disease."

This last-mentioned expert also testified that plaintiff would have been unable to walk if he had torn or severely strained the ligaments which supported his arches.

The trial judge in dismissing the suit obviously concluded, after listening to the conflicting testimony of which the above discussed constitutes a small part, that plaintiff had not sustained the burden of proving that he has a disability proximately caused by or resulting from the accident. No doubt.he applied the well-settled rule of law that even in compensation suits, in which the strict rules of evidence and procedure are not employed, the injured claimant must prove his demands with legal certainty, and a judgment awarding compensation cannot be rendered by the court predicated on possibilities or probabilities. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Tullis v. United Carbon Co., La.App., 142 So. 307; Reynolds et al. v. City of Shreveport, La.App., 155 So. 469.

There is another principle of law firmly embedded in the jurisprudence of this state to the effect that an appellate tribunal is reluctant to disturb the judgment of a trial court in a case providing only issues of fact, such as the instant one, and will not do so where the evidence is irreconcilably conflicting and no manifest error appears in the decision from which the appeal is prosecuted. Authorities furnishing this doctrine are numerous and citation thereof is unnecessary.

In view of the many contradictory statements furnished by the lay and expert witnesses in the case under consideration, and the further fact that these persons were seen and heard by the district judge as their testimony was given and were no doubt in most instances well known to him, we are not prepared to say that manifest error has been committed.

Accordingly, the judgment is affirmed.