In discussing Article 2203, R.C.C., this Court in the case of Fridge v. Caruthers, 156 La. 746, 752, 101 So. 128, 130, stated:

"This article of our Code is a literal translation of article 1285 of the French Code. The French commentators are unanimous in holding that the article means just what it says: From the fact that the creditor renounces his right as to one (of the solidary debtors) the law concludes that he intends to renounce his right as to all. Each of the solidary obligors is liable for the whole debt as principal debtor to the creditors and is only liable as surety to his codebtors, and that is why the creditor may not discharge one without discharging the others. Planiol 'Traite de Droit Civil,' vol. 2, No. 749; Huc 'Commentaire du Code Civil,' vol. 8, No. 138; Aubry et Rau 'Droit Civil Francais,' vol. 4, p. 205; Laurent 'Principes de Droit Civil,' vol. 17, No. 340."

We have examined the decisions of this Court cited by the plaintiff and find that there is no holding therein to the contrary.

The cases of Quatray v. Wicker, 178 La. 289, 151 So. 208, and Aetna Life Insurance Co. v. De Jean, 185 La. 1074, 171 So. 450, cited by the plaintiff, were cases involving contribution. The contention urged herein was not involved in those cases.

The plaintiff contends that the Court of Appeal erred in holding that the reservation must be in writing and incorporated in the release itself and erred in holding that parol evidence was not admissible to prove a sufficient reservation.

The plaintiff entered into a compromise settlement granting one of the joint tort-feasors a discharge, all of which was reduced to writing. There is nothing in the written compromise settlement and release to show that the plaintiff intended to reserve his rights against the other tort-feasor. There is no beginning of proof.

There is no ambiguity. Moreover, since the plaintiff availed himself of the provisions of Article 3071, R.C.C., he would be governed by the provisions of that article.

The plaintiff cites Williams et al. v. De Soto Bank & Trust Co., 189 La. 245, 179 So. 303, to the effect that there is nothing sacramental about the form in which the reservation is made.

In the instant case the parties reduced their agreement of settlement and discharge to writing and there is no reservation made therein. The plaintiff is bound by his agreement and cannot alter or change it by parol evidence.

For the reasons assigned the writ of review is recalled and the judgment of the Court of Appeal is affirmed.

## HAMRICK v. TWIN CITY CAB CO., Inc.

### No. 5931.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

Brunswig Sholars and James H. Dormon, both of Monroe, for appellant.

Fink & Fink, of Monroe, for appellee.

HAMITER, Judge.

On March 9, 1938, and for several years prior thereto, plaintiff was in the employ of the defendant company as a taxicab driver. He ceased working on the night of the mentioned date, because of his having allegedly become disabled, and thereafter instituted this suit against his employer under the provisions of the Louisiana Employer's Liability Act. Act No. 20 of 1914. Compensation is asked as for total and permanent disability.

Pertinent allegations made by him are:

"That while in the employment of the said defendant and while operating one of its taxi-cabs on the night of March 9, 1938, your petitioner was getting out of said taxicab at the cab stand located at 211 Grammont Street, Monroe, Louisiana, and in doing so accidentally strained himself; he felt sick but continued until his time to work was up for that particular night.

"That he went home and called Dr. Irving J. Wolff who examined your petitioner and found that he had sustained a left inguinal hernia in alighting from the taxi-cab on the night of March 9, 1938. That he has been under the treatment of said Dr. Irving J. Wolff since the date of the accident."

In its answer defendant generally denies the averments of the petition.

The district court rendered judgment in plaintiff's favor awarding compensation for a period of 32 weeks beginning March 9, 1938. Defendant appealed.

An answer to the appeal has been filed in which plaintiff asks that the judgment be amended so as to order payment of compensation for a period of not more than 400 weeks, and, as amended, it be affirmed.

The record propounds two questions: (1) Did plaintiff sustain a hernia, and (2) if so, did it result from an accident occurring while he was performing the duties of his employment with defendant? These will be discussed in the order listed.

The testimony of plaintiff is that while alighting from his cab between 11 and 12 o'clock on the night of March 9, 1938, he felt a sharp pain in the lower abdominal region on his left side. None had been noticed there before. No heavy work or unusual exercise had been previously undertaken. He continued working until 3 o'clock of the following morning, at which time he made a report of the accident to defendant's night operator and went to his home. After arriving there he summoned Dr. Irving J. Wolff.

The named physician answered the call between 5 and 6 o'clock of that morning. According to his testimony, given as a witness for plaintiff, he found the employee "lying in bed with his knees flexed on his abdomen and complained of pain in the left lower quadron of the abdomen and nausea." An examination was made, regarding which it is stated that, "in moving my hand over to the left lower quadron of the abdomen I found a bulging of about the size, I should say, of an almond nut, in the region of the left inguinal ring; he was exquisitely tender in this area. * * * The bulging in this area indicated what we term a bubonocele, which is an early beginning hernia. It is a relaxation of the inguinal ring. * * * The sensitiveness was produced by the loop of either a bowel or gut or by omentum being incarcerated or both in that area." Dr. Wolff then administered hypodermics and by careful and gentle manipulation slid the protrusion back into the abdominal cavity. Following this the patient began to get practical relief almost immediately. Afterwards, he remained in bed for quite a while.

Plaintiff was seen by Dr. Wolff on several other occasions, the last being about October 15, 1938. At this last mentioned time it was found that "there was some relaxation of the inguinal ring left, and upon having the patient to stand on his tiptoes and cough, with your finger up into the inguinal ring, there was still some bulging but it was not as pronounced as it was at the time I saw him out there but there was still a relaxation of that ring." When asked if he considered that plaintiff, on the last occasion, had what

is meant as a hernia, he replied: "He had a relaxation of that inguinal ring and what we call a bubonocele."

The physicians called by defendant testify that on their examinations of plaintiff they observed no evidence of hernia. These were Dr. W. L. Bendel and Dr. George Wright.

Dr. Bendel saw him on March 19, 1938, or ten days after the sustaining of the alleged injury, and again on October 18, 1938. As to the first visit he states that the "physical examination was negative, except for the left inguinal ring on the site of which the patient complained. In that area the patient appeared to be quite sensitive. However, on examination there was no bulging, and when the patient was asked to stand up we were unable to discern any bulging. I was of the opinion that possibly the ring was very slightly enlarged; however, that is a condition not unusual and very frequently found on individuals. At the time I saw Mr. Hamrick, on March 19th, I was not of the opinion that he had any evidence of a hernia. However, I called Dr. Wolff, who was his physician, and after I talked to Dr. Wolff he gave me a definite history of the man having had what he considered an incarcerated hernia and, realizing that Dr. Wolff is a reputable physician, I was willing to consider that such condition did exist, but frankly I was unable to discern any positive evidence of hernia."

Another examination was made on the last mentioned date and there was no indication then of hernia and no pain present.

A copy of a letter written by Dr. Bendel on March 19, 1938, the date of his first examination, was offered in evidence and relied on by plaintiff. Therein the following conclusions of the physician are stated:

"At the present time, it does not seem to me a great deal of evidence of a hernia although the ring is slightly enlarged and there is much sensitiveness in this area. The patient, however, has been in bed since his alleged injury and the history given by Dr. Wolff, a very reputable physician in Monroe, indicates that this patient definitely had an incarcerated hernia. In view of this fact and realizing the type of work the patient does and the probability of this condition getting worse, I believe it would be advisable to submit this patient to surgery and in discussion

with him about it, he advised he would be willing to be operated on."

Viewing such conclusions in the light of his aforequoted testimony, it is clear that they were based primarily on information furnished by Dr. Wolff. Dr. Bendel's independent opinion was that no hernia existed. He positively states, "I don't think he had a hernia."

Dr. George Wright's examination was made on October 18, 1938. He found both rings to be "about the size of the index finger and that is not large." It was his definite opinion and conclusion that plaintiff possessed no hernia.

The testimony of the three above named physicians constitutes all of the medical proof that the record contains. From this evidence, it does not appear as a certainty that plaintiff's disability resulted from a hernia.

However, if the condition that Dr. Wolff found is to be classified as a hernia, the record is not convincing that it resulted from an accident sustained by plaintiff in the course and scope of his employment with defendant. The sole testimony on this issue is furnished by plaintiff. When asked to describe the occurrence, he stated:

"Well, the first time I noticed it, I drove up to the office and parked and started to get out and a pain hit me in here and I slipped back in the car and sat there a while and after I had sat there a while it didn't hurt so bad and I got out, and then I went on and made another trip, and I stopped over in West Monroe at the West Monroe office and when I got out over there it was hurting me worse, and when I got back to the other office it was hurting me so badly I couldn't hardly get out."

Also relevant are the following questions propounded to him and answers thereto given:

"Q. Which side of the car did you get out on? A. On the left side.

"Q. On the driver's side? A. Yes sir.

"Q. Did you jump out of the car or get out of the car normally? A. Like anybody would. I just started to step out like anybody would.

"Q. Was there anything that made you jerk yourself or strain yourself in any way? A. Well, I couldn't tell, because anybody just driving up and getting out

of the car like that you wouldn't be noticing those particular things.

"Q. But you did notice the pain when you started to get out? A. Yes, sir."

Dr. Wolff, who was offered as a witness by plaintiff as before stated, further testifies:

"Q. Do you think that a man could very easily sustain the relaxation that you found by simply getting out of an automobile, if nothing else happened, just getting out of an automobile like you do? A. Just to get out of a car?

"Q. Just to get out of a car, without any jar or strain connected with it? A. I don't think so.

"Q. You don't think so? A. No, sir."

A plaintiff in a suit under the Workmen's Compensation Act must make out his case with a preponderance of testimony and with the same legal certainty as is required in other civil actions. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Tullis v. United Carbon Co., La.App., 142 So. 307; Johnson v. John J. Kilcoyne, Inc., La.App., 180 So. 159. Our close study of the record in the instant controversy leaves us with the conviction that this plaintiff has not discharged the burden of proof that is his.

The judgment therefore is reversed and set aside, and plaintiff's demands are rejected at his cost.