**AGEE v. BROWN PAPER MILL CO. Inc., et al.**

**No. 5945.**

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

Rehearing Denied May 29, 1939.

Dhu Thompson, of Monroe, for appellant.

A. Milling Bernstein, of Monroe, for appellees.

HAMITER, Judge.

The petition of plaintiff herein recites that on or about November 29, 1937, while he was working for the Brown Paper Mill Company, Inc., "in what is called the wagon, which is a tank in which chemicals or liquor is burned, he attempted to lift

down a large piece of smelt which had accumulated in the tank and which he had sawed off according to orders and in his attempting to handle it fell or jerked him so that he received a hernia from which he is now totally disabled to do any work of any reasonable character." It is further alleged that the "aforesaid hernia was the result of an injury or trauma suffered by him in the regular course of his employment and in the course of his employer's trade or business." The prayer is for a solidary judgment against said employer and its insurer, the New Amsterdam Casualty Company, awarding workmen's compensation as for total and permanent disability and for medical expenses incurred.

Denial is made by defendants in their joint answer that plaintiff received a hernia while engaged in and as the result of the performance of his work with such employer.

Plaintiff's demands were rejected and he has appealed.

The evidence conclusively discloses, and it is undisputed, that when this suit was instituted on September 9, 1938, appellant was suffering with a right inguinal hernia. However, it is seriously disputed that such affliction occurred as a result of his employment with defendant, Brown Paper Mill Company, Inc.; and this furnishes the sole issue in the case. Obviously, it is one of fact.

The only testimony in the record relating to the actual occurrence of the alleged accident is that of plaintiff. He states that on a day during the latter part of November, 1937, he was working in the "wagon". This is a tall, large, round tank or boiler in which certain chemicals used in the employer's business are processed. A hard substance known as smelt accumulates therein during the operation, and the removal of it becomes necessary at times. Plaintiff says: "When I got down there and cut the smelt off in the flues like this, I was standing on the board; I cut a great big end piece of smelt and I set the air hammer aside and reached down to pick the smelt out and it dropped in the bottom, and when I reached down to pull the smelt out off the bottom the pain hit me in my chest and stomach." The mentioned piece weighed nearly 200 pounds. He immediately ceased working and informed two of the mill foremen that he was sick. One of them told him to go on home. He left the company premises about 11:20 A. M., and reached his house approximately forty minutes later. He was hurting in his stomach and chest and went to bed. He also states that Dr. Graves called to see him about 1:30 o'clock P. M., of that same day.

The two foremen, to whom plaintiff refers, do not recall his having informed them that he was sick and leaving the shift and going home. No accidental injury to him of any kind was reported to them. Mr. Joe Brumfield, who was plaintiff's immediate superior, testifies that the employee worked the full eight-hour shift on his last day at the mill, which was November 29, 1937. This work was done in the recovery room and not in the tank or "wagon", as plaintiff claims.

Further testimony of plaintiff is that he complained to Dr. Graves, on the latter's above mentioned visit, of pain in his stomach and chest. The physician "just felt of my face and put his hand around on my stomach; that is the only examination he made that day." No physician visited him during a period of five weeks thereafter. The following day he noticed the commencement of a swelling in the scrotum, and this abnormal condition has been continuous ever since. It is further stated by him that Dr. Graves has never made a complete examination of his body, and that he did not know that he possessed a hernia until in September, 1938. This date was approximately nine months after the occurrence of the claimed accident.

The existence of the described swelling is also attested to by plaintiff's wife, his brother and another colored person. These state that the affected portion was bathed almost daily with warm salt water.

The testimony of Dr. Graves is greatly at variance with that of plaintiff in many important respects. This professional man testifies that his first visit to plaintiff was in the morning of November 30, 1937. "I think it was around eight or eight-thirty. He had just come from the mill he said. He said he had taken sick the day before and had come home there with fever and rigor and complained of pain in his chest and was coughing. When I examined him very carefully I found that he had the typical characteristic symptoms of acute influenza." No complaint was then made as to pain in the stomach or the inguinal region. "He only complained of pain in the chest." "I had just treated his mother

who had two large cavities in the lungs, and he had lost two brothers, and when this boy became sick I became very suspicious of his developing tuberculosis." There was no mention made of an injury or strain received at the mill. An examination of the scrotum revealed it to be perfectly normal.

Dr. Graves further says that he visited plaintiff again on December 10, 1937. This visit is denied by the latter. At that time "the cover and shirt were laid back and I saw his whole abdomen and genitals." The scrotum was not abnormal and no complaint was made of pain therein or in the inguinal region or the abdomen. The temperature and cough experienced by the patient furnished the belief that tuberculosis was present. Instructions were then given to the proper authorities that plaintiff be paid the benefits provided for by a group sick and health insurance policy carried by the employer.

Later Dr. Graves reached the definite conclusion that the patient was suffering from tuberculosis, and he ordered confinement to bed for from four to six months. Periodically after this order was given he saw the employee, and on none of these occasions was a complaint made of pain in the abdomen, scrotum or genitals.

Payment of the weekly insurance benefits ceased on or about June 2, 1938, by reason of the limitation provisions of the policy, and plaintiff inquired of Dr. Graves if he could then return to work. "I told him that he was getting along fine but to wait a couple of weeks more before going back to work and he did."

On June 22, 1938, plaintiff appeared in said physician's office and presented an examination card which he had obtained from the gate office of the employer. Its regulations provide that prospective employees and those who have experienced a spell of sickness must secure such a card, undergo a complete physical examination, and return it with the physician's report written thereon. The desired examination was made, during which plaintiff's scrotum and abdomen were exposed. Dr. Graves sought to ascertain if a hernia existed. At the time there was no complaint of any pain or disability. It was found that the left ring was normal. The right ring was slightly dilated, but there was no bulging of the canal. The scrotum was not swollen. No evidence of hernia then existed. A finger was inserted in the inguinal canal and no tenderness or swelling there was noticed. As a result of the examination the physician "passed him with the provision, as stated on the card, that he had an arrested case of tuberculosis and was able to do light work."

The employee was again seen and examined by Dr. Graves on September 14, 1938. This examination was made at the request of defense counsel and was subsequent to the filing of this suit. On that occasion the existence of a right inguinal hernia was observed. The affliction may also be termed a scrotal hernia because the viscera entered the scrotum.

Speaking generally of plaintiff's condition, Dr. Graves states that the patient "started out with an acute case of influenza but he wound up with an acute case of tuberculosis"; that he has coughed continually from the beginning until the date of the trial of the case; and that he positively had no hernia on June 22, 1938, but that one was apparent on September 14, 1938. On cross examination the physician was asked the question, "How do you account for the hernia that he has at the present time?" His reply was:

"I account for it in this manner, Mr. Thompson, when you have tuberculosis you have an exhaustion and a weakness of the muscular substances, and up walking around and coughing, etc., you place upon the rings a lot of intra-abdominal pressure and the muscles, as a result of tuberculosis, being weak already, that could have easily happened."

Plaintiff testifies that he does not remember his obtaining of the aforementioned examination card from the gate office. The evidence is conclusive, however, that he did so secure it. It also appears from the record that plaintiff knew of the company's regulation requiring the reporting of all accidents immediately after their occurrence and that the one allegedly sustained by him was never reported.

None of the professional men called by plaintiff as witnesses made a physical examination until during or after September, 1938. Then it was found, as the defense admits, that the hernia was present. The medical opinions furnished in behalf of the employee during the presentation of his case in chief are to the effect that the affliction was traumatic in nature. These are predicated on the late physical examinations made and the history of an accident as related by plaintiff.

In rebuttal plaintiff offered additional medical proof seeking to show that lime and other fumes, which he testifies he inhaled while working, caused the tubercular condition that Dr. Graves found and that such, together with his coughing, ultimately resulted in the hernia. This evidence was objected to as not being in rebuttal and as not covered by the pleadings. It was admitted subject to the objection. We find it unnecessary to pass upon this ruling, although its admissibility is seriously doubted.

▋ Considering the record as a whole, including the rebuttal testimony, it does not appear with any degree of certainty that a causal connection existed between the hernia and the work that plaintiff performed. The apparent conflict between the testimony of Dr. Graves and that of plaintiff and his witnesses, relating to the alleged continuing swelling in the scrotum, must be resolved in favor of the named physician. His statements are in no manner discredited, while doubt, because of the aforementioned contradictions, attends the correctness of those of the others. Consequently, the conclusion is that plaintiff was suffering with no hernia on June 22, 1938, or nine months after his cessation of work.

▋ There is a bare possibility that the disability is traceable to the employment. However, such a situation will not justify a compensation award. The following language employed by us in Johnson v. John J. Kilcoyne, Inc., 180 So. 159, 161, is, we think, here applicable, viz.:

"The trial judge in dismissing the suit obviously concluded, after listening to the conflicting testimony of which the above discussed constitutes a small part, that plaintiff had not sustained the burden of proving that he has a disability proximately caused by or resulting from the accident. No doubt he applied the well-settled rule of law that even in compensation suits, in which the strict rules of evidence and procedure are not employed, the injured claimant must prove his demands with legal certainty, and a judgment awarding compensation cannot be rendered by the court predicated on possibilities or probabilities. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666; Tullis v. United Carbon Co., La.App., 142 So. 307; Reynolds et al. v. City of Shreveport, La.App., 155 So. 469.

"There is another principle of law firmly embedded in the jurisprudence of this state to the effect that an appellate tribunal is reluctant to disturb the judgment of a trial court in a case providing only issues of fact, such as the instant one, and will not do so where the evidence is irreconcilably conflicting and no manifest error appears in the decision from which the appeal is prosecuted. Authorities furnishing this doctrine are numerous and citation thereof is unnecessary."

The judgment is affirmed.