This is a suit for workman's compensation. It is brought by Manola Custer, *Page 512 
widow of the deceased employee, August Vath, who, on behalf of herself and three minor children, Eugene Joseph, Patricia Ann and Janet Claire, prays for judgment of $20 per week for three hundred weeks and also for the amount expended or due for medical and hospital bills and for the burial of the deceased.
The defendants are Higgins Industries, Inc., by which corporation the deceased was employed, and Maryland Casualty Company, the liability and compensation insurance carrier of the said employer.
There was judgment below for three hundred weeks at $20 per week; $250 for medical and hospital expenses, and $120 for burial expenses. The defendants have appealed.
There is little dispute about the facts, but the defendants resist the demands of the plaintiff on two grounds. First, they say that no accident occurred; that nothing unusual took place, and that if the deceased sustained any injury which resulted, ultimately, in his death, that injury was caused not by any accidental occurrence, but solely by the fact that he was suffering from a malignant tumor which had come into existence prior to the day on which he said he was hurt, but had come to light only on that day and then not as a result of the accident but only because his own physical condition was such that he could not, in the usual ordinary way, do the usual ordinary work required of him.
And secondly, defendants maintain that if it could be said that there was an accident on that day, it neither caused nor accelerated the malignant tumor from which the deceased ultimately died, and that he would have died solely as a result of the tumor regardless of any occurrence which took place on that day.
It is admitted that, for some time prior to the day on which it is claimed Vath was injured as a result of an accident, he had been employed by defendant, Higgins Industries, Inc., as a machinist and that his work consisted of general machine work in and around boats and it is shown that on that day he was working with an assistant in trying to adjust a skylight hatch door, and that in doing so he was pushing it into place with his hands while his elbows pressed against the right side of his abdomen. It is shown, too, that his assistant, Herbert F. Legendre, left the work for a few moments and that when he returned Vath told him that he had hurt himself and that when Legendre asked him how he had sustained the injury, he answered:
"Well, I had my elbows like this and was pushing against it."
He illustrated by placing his elbow against his abdomen. The record shows that shortly thereafter, Vath told his "leaderman" that as he had pushed against the skylight with his elbows against his stomach, he had felt a sharp pain in his side and that he had had to sit down for a short time. This was at about 11:30 o'clock in the morning. He continued to work the balance of that day and worked every day until December 15, 1943, which was some nineteen or twenty days later, except that on two or three occasions he found it necessary to leave his work to go to see a doctor.
On December 15, 1943, he called on Dr. Lennard Smith, a physician of his own selection, who on examining him, found that "there was a large lump, or a mass, present, which, of course, was abnormal." Dr. Smith advised Vath to consult a physician of the Higgins Industries, Inc., and he entered Hotel Dieu, a large local hospital, where he was examined by Dr. James T. Nix, a prominent surgeon. Dr. Nix found that he was suffering from a peritoneal tumor and he stated that in his opinion it was at that time advisable to operate, but that when the abdomen was opened he "found the tumor to be irremovable"; and that all that could be done was to administer X-ray treatment; that this was done but that Vath died on May 30th, 1944. From the record it abundantly appears that Dr. Nix's diagnosis was correct; that there was an inoperable tumor and that death was inevitable.
It also appears that when Vath entered the employ of Higgins Industries, Inc., he was subjected to a medical examination and that at that time he appeared to be in good physical condition and that, if the tumor then existed, it had not manifested itself. It appears, too, that until November 26th, 1943, which was the day on which he first complained of the pain, he had no idea that there was anything wrong with him.
Defendants' first contention is that no accident occurred and that there can be no recovery under our compensation law unless there has been an accident.
Section 2 of Act 20 of 1914 provides that compensation is to be paid only where the employee receives "personal injury by accident * * *." And section 38 of the Act, *Page 513 
as amended by Act No. 38 of 1918, defines "accident" as follows:
"* * * The word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. * * *"
We are well convinced that the record fails to show that there was any unusual or unexpected occurrence insofar as the work itself was concerned. Nothing slipped, nothing broke, nothing unusual happened, except that on that day, for the first time, the employee felt pain in his abdomen. It seems, from the record, that he was doing his usual ordinary work in the usual ordinary way exactly as he had done that work on many earlier occasions. The reason why on that day something happened was not because anything in his work went wrong, but simply because within the man himself there had taken place a change, as a result of which he was unable to withstand the pressure against his abdomen caused by his placing his elbows against it.
There is much medical testimony concerning the question of whether the tumor, which first made itself manifest on that day, came into existence as a result of that occurrence or whether it had existed, undiscovered, for some time prior to that day. We think it unnecessary to discuss this evidence in detail because it is obvious that the doctors are almost unanimously of the opinion that it had existed before that occurrence, but that on that day for the first time the pressure exerted against the abdomen caused it to be noticed.
Dr. Matas, than whom there is no more respected authority, expressed the opinion, shared by all of the medical experts, when he said in his report:
"* * * Whether this tumor existed before the patient complained of the acute paroxysm of pain described as he felt it, about November 23rd., cannot be determined. It is more than probable that the tumor existed but had caused no symptoms until the muscular strain described as occurring on about November 23rd. probably caused the rupture of a blood vessel that supplied the tumor * * *."
Dr. Fasting, another physician and surgeon, who appeared as a witness for the plaintiffs, testified as follows:
"Q. Well, now, the question was, Doctor, it is your opinion that that incident of trauma, or alleged trauma, had any effect upon that tumor in causing it to grow, metastasize, or any other deleterious effect? A. Yes, it can do it.
"Q. In other words, a reasonable possibility exists that that could have taken place? A. It is reasonable.
"Q. It is a justifiable assumption, would you say? A. Yes.
"Q. Doctor, would it have been possible for Mr. Vath to have had that tumor in his system prior to the date of this incident and to have gone about his normal pursuits without any subjective evidence of it? A. Yes — not only for him, but it is a rather commonplace experience to encounter those situations."
In addition to the facts already given as to just how the alleged "accident" occurred, we have the statement of Dr. Matas, based on what the injured employee told him. This statement is as follows:
"While apparently in good health he became ill suddenly on or about Nov. 23, 1943, he was working on a ship deck, trying to adjust a skylight hatch door cover (putting it in place) by pushing forward with the 'palms of his hands', his elbows pressing on his abdomen, when he suddenly experienced a very severe pain in the umbilical region. The pain was stabbing in character and was severe enough to make him bend forward and 'grab his abdomen.' The pain lasted for about four minutes and then completely disappeared until about a week after this occurrence he began to feel a generalized pain over the abdomen which was felt more severely in the right epigastric and hypochrondriac region."
It is true that Dr. Matas, in another part of his testimony, used the word "struck"; saying "* * * when he was struck by the skylight * * *," but there is not one word in the record to indicate that at any time he was struck by the skylight and it seems certain that all that happened was that he pushed his elbow against his abdomen in pushing the skylight with his hands.
On this phase of the case, the question is simply whether such an occurrence may be characterized as an "accident."
[1] That there must be an accident is, of course, well settled. In Robichaux v. Realty Operators, Inc., 195 La. 70,196 So. 23, the Supreme Court granted a writ of review and considered a case in which we *Page 514 
had held that there could be no recovery because there had been no accident. The Supreme Court found that there had been an unusual occurrence which had caused the injury and that however unimportant this occurrence may have seemed at the time, it could be definitely pointed to as an unusual and unexpected happening which had taken place. And there the unusual happening did not take place in the physical structure of the man himself but in the performance of his work, for the Supreme Court found that the sugar cane which the employee had been piling up by means of a stick had slipped or rolled back upon the stick and had caused it to injure his already sore hand.
[2, 3] And yet, in spite of the fact that in the Robichaux case the Supreme Court seemed to find it necessary to show that there had been an unusual happening in the work itself, we think that a study of the jurisprudence shows that there is a preponderating view to the effect that included in the category of accidental happenings are those in which all that occurs is that the employee, because of physical weakness or disease, is overcome while performing his usual ordinary work in the customary way.
In Cannella v. Gulf Refining Co. of Louisiana, La. App., 154 So. 406, we considered a case in which the employee had suffered acute lead poisoning by inhaling the fumes from paint which he was using. Apparently, the condition of Cannella was such that on that particular occasion, he could not withstand the effects of the fumes of the lead paint and we held that the lead poisoning had resulted from accident. We quoted with approval from the case of Matthiessen Hegeler Zinc v. Industrial Board et al., 284 Ill. 378, 120 N.E. 249, 251, in which the court, discussing the question of what events should be termed as accidental, said:
"While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employe. In this case there was evidence from which the Industrial Board was warranted in finding that on October 6, 1914, in the course of the employment of Adrian he contracted arsenical poisoning which resulted in his death. It is true that Adrian had been exposed to practically the same conditions for many years without injury, but it would not be unreasonable to conclude that his immunity was because of the state of his health and his ability to resist the deleterious effects of the gases and fumes over which he worked; but this time his physical condition was such as to make him susceptible to arsenical poisoning in such a degree as to bring on his fatal illness and death. There was sufficient competent evidence before the board to sustain the finding and it cannot be disturbed."
Professor Bohlen of the University of Pennsylvania Law School, in 25th Harvard Law Review at page 337, discusses the meaning of the word "accident" and expresses the view that that word may be applied not only to the unexpectedness of the occurrence, but also to the unexpectedness of the results. He says that the word "accidentally" does not necessarily indicate the existence of an accident in the sense in which the word is usually used, "but would seem to relate * * * to the injury being neither intended nor expected."
In Wright v. Louisiana Ice Utilities Co., 14 La. App. 621, 129 So. 436, our brothers of the First Circuit considered a case in which it was contended that the deceased, who had died of a heart attack, had not suffered an accidental injury. The court, however, held that, if the physical structure of the body, or of any of its internal parts, had been unequal to the strain produced by the work in which the employee was engaged, the result constituted accidental injury. The Supreme Court refused to review this conclusion.
In Biggs v. Libbey-Owens-Ford Glass Co., 170 So. 273, 274, the Court of Appeal for the Second Circuit said:
"There is really but one issue in the case, and that is whether plaintiff experienced an accident, causing the hernia, while performing the duties of his employment. * * * [Plaintiff] was pronounced physically sound by the glass company's physician on September 3d. He worked continuously for the company until November 2d and quit work under the circumstances hereinbefore related. He was found afflicted with the hernia on November 5th. The difference in his conditioncertainly arose while he was performing the services of hisemployment. Plaintiff's right to recover is secured to him, even though his disability was not immediately caused by *Page 515 
an unusual strain or physical effort, or some awkward movement of his body. It is sufficient for recovery that the affectedparts of his body gave way while at work for defendant."
In Hennen v. Louisiana Highway Commission, La. App., 178 So. 654, 656, the court said:
"It is contended by defendant that plaintiff suffered no accident within the meaning and intendment of the compensation statute, Act No. 20 of 1914, as amended. In this connection, its counsel argues that only injuries of an accidental nature are compensable, and that there was nothing accidental about the injury in question for there was no unusual or unexpected happening to claimant; that he did exactly what he intended doing, viz., assisting in the loading of the Tresno onto a truck. This contention is, in our opinion, without merit, in view of the Jurisprudence of Louisiana. In Jackson v. Travelers' Insurance Co. et al., 180 La. 43, 156 So. 169, 170, the Supreme Court had under consideration a compensation controversy involving a strain. The employee in the cited case 'was engaged, with the assistance of a fellow workman, in lifting cross-ties, weighing between 200 and 400 pounds, and placing them upon the shoulders of a third workman, who then took the ties to a box car. He had worked from 7 o'clock in the morning of May 6th until about 10 o'clock when he and his co-worker picked up a tie, and had raised it to about the height of a man's shoulder, when deceased dropped his end and exclaimed: 'I done jerked a kink in my side!' Soon thereafter he spat up blood, later had a hemorrhage of the stomach, and continued to have them at intervals until he died some five or six days afterwards from hemorrhage of the stomach." Theemployee, at the time of the strain, was performing his work asintended; yet the court held that his injury and resultant death were caused by an accident arising out of his employment and were compensable. A somewhat similar situation is found in the instant case."
In Causey v. Kansas City Bridge Co., La. App., 191 So. 730, the deceased was doing his ordinary usual work when he was overcome in some unexplainable way and it developed that he was suffering from an internal mass which proved to be a tumor. The doctors found no external evidence of trauma and yet the court held that his death was the result of accidental injury.
[4] When we come to consider the second contention of defendants that even if the occurrence could be termed an accident, it does not appear that that occurrence was the cause of Vath's death, we find that the overwhelming weight of medical opinion is to the effect that a malignant tumor such as that from which Vath was suffering may be accelerated in its development by traumatic pressure exerted against it externally, and that in Vath's case that is what occurred.
It is true that some of the surgeons said that they could not say positively that the development of the tumor had been accelerated by that happening, but it is certain from the reading of the opinions of these surgeons that they thought that this acceleration had taken place.
Counsel for defendants direct attention to several cases in which it is recognized that even in suits for workmen's compensation, a plaintiff must produce the necessary proof to show more than a possibility, or even a probability; that the accident caused the injury or accelerated the latent disease. Typical of these cases is Tullis v. United Carbon Co., La. App., 142 So. 307, in the syllabus of which appears the following:
"Courts cannot decide cases on possibilities, even though it be compensation case in which court always construes law and facts liberally."
Here, however, the medical evidence shows that the doctors evidently felt that there is even more than a probability that the progress of the tumor was accelerated by the occurrence.
Of course, the doctors do not say positively that such was the case, but if absolute certainty in such a case is to be required, then in many, if not in most cases of internal injuries, there can be no recovery, because seldom can a physician say with absolute certainty that such an internal injury was caused by a designated external happening. Where, here the record shows that the doctors are evidently of the opinion that the effect on which the claim is based is the result of the cause which is relied upon, we think that that opinion must be accepted. Particularly is this true where the sequence of events is so significant. Until March 2d 1944, the plaintiff was apparently perfectly healthy and normal. On that day the pressing of his elbows against the abdomen caused a *Page 516 
sudden pain. Shortly thereafter, the pain became worse and it developed that he was suffering from a tumor, and with great rapidity the tumor grew and, in a few months, caused his death.
In Causey v. Kansas City Bridge Co., supra [191 So. 732], the Court said:
"We agree with the trial judge that Ralph Causey's sudden lapse into complete disability on the occasion when he was unloading these heavy rocks, when always prior thereto he had been a vigorous, active, hardworking laborer, is rather convincing that he at that time suffered a severe strain which must necessarily have had serious effect on the cancerous growth. That conviction is strengthened by the medical testimony to the effect that a blow or strain could aggravate or activate a dormant cancerous growth."
[5] The whole story evidences the fact that the happening on that day accelerated the growth of the tumor. If it did, there can be no doubt of the right to recover, because for many years it has been held that, even though the accident might not have produced disability except for the condition of the employee, nevertheless, there can be recovery if the accident accelerated or lighted up the dormant physical condition and thus produced disability. In Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862, the Supreme Court found that the employee had suffered from locomotor ataxia long prior to the accident and that the accident caused "the immediate change in his physical condition * * *." The court then found that the accident had thus caused "the disability of which he complains" and held that the employee was entitled to compensation. That result has been followed in this State ever since.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed. *Page 589