JANVIER, Judge.
This suit for compensation is based on the allegation that, as a result of an accident which arose out of and occurred in the course of the employment, plaintiff sustained a hernia, as a result of which he is totally and permanently disabled.
It is conceded that he is now suffering from a hernia, but it is contended that the record does not show that there was any accident by which the hernia was caused or that the hernia arose out of or was sustained during the course of employment.
While it is not alleged in the petition, there was presented in oral argument the contention that even if the hernia was not caused by an occupation connected accident, it was aggravated by such an accident, and that accordingly there is liability for compensation.
There was judgment dismissing the suit and plaintiff has appealed.
The defendants are U. S. Industrial Chemicals, Inc., the employer, and its compensation insurance carrier, Liberty Mutual Insurance Company.
The record shows that the plaintiff entered the employ of U. S. Chemicals, Inc., in September, 1947, and that at that time, in accordance with the established custom of the employer, he was given a complete physical examination by a well recognized medical clinic in New Orleans, which clinic was regularly employed by the company for that purpose. The report of that examination made no reference to hernia.
The employer had established the custom of requiring each employee to undergo a complete medical examination every two years and, accordingly, plaintiff was again examined at the same clinic in March, 1949. The report of this examination made no reference to a hernia.
In that report it was stated that the plaintiff was suffering from varicose veins which were moderately severe, and, accordingly, he was required to submit to another examination the following year during May, 1950.
In the report of that examination, dated May 24th, 1950, appears the following note: “left inguinal hernia, asymptomatic.” The word, asymptomatic, we are told means not necessarily disabling. At the bottom of the report appears the following statement:
“Hernia asymptomatic and will not prevent doing full service. * * * Surgery advised for varicose veins & hernia * * *.''
*658 There is a dispute as to whether the existence of the hernia at that time was called to the attention of plaintiff. He says that it was not. Mr. H. F. McLoughlin, the plant manager of the defendant employer, says that he is certain that when he received the report, he called it to the attention of plaintiff.. It is almost incredible that Mr. McLoughlin would have' failed to advise Jarnagin of the hernia as he says that it was the regular custom of the company to advise employees of such matters, and that, though he has no independent recollection' of the conversation with Jar-nagin, his notes show that he did tell him of it and did state that it was advisable to have it corrected.
It is not absolutely necessary that we determine whether Jarnagin was advised of the existence of the hernia. The all-important fact is that there can be no doubt at all that at that time the hernia'had already made its appearance.
Plaintiff maintains that on December 24th, 1950, which was six months after the date of that report, an accident occurred and that this accident was the cause of his hernia. He says that during the night, at ,a, time when only he and one other employee were present,, he stepped from the door of a refrigerator car to a loading platform, that his foot slipped and that, though he did not “fall flat” on his face, he was “sort of suspended in space.” He did not think that he had been seriously hurt, and he made no report of that “accident” to anyone, though it was á part of his duty to make reports'of any accident which might occur while he was in charge of that particular part of the operation of the plant. He continued at work during the rest of that night and at no time thereafter discontinued working, nor said anything at all about an accident until after ther.e had been still another medical report in April, 1951, which again made reference to the hernia and in which appears the following statement: “Should have hernia repaired. * * *»
The only corroboration of plaintiff’s statement as to such an accident comes from Jules Voinche, who was the other employee who is said to have been present at the time of the alleged accident. We have grave doubt as to the credibility of this witness. He says that minor accidents occurred very frequently and that when this accident occurred Jarnagin told him that it was .not serious and he was not hurt, and he also says that he did not discuss the matter until he gave his testimony out of court almost two years later and that even on that morning they talked about old times around the plant and that, although they did not discuss the details of the accident, “it did come up once or twice, but we didn’t discuss it that much.”
There is no doubt that at the time of the examination of April, 1951, Jarnagin was told that the hernia should be repaired and that, in accordance with the custom of the employer, all costs of the necessary operation and all wages lost during recovery would be paid to the employee. It clearly appears also that Jarnagin was told that the employee was protected by compensation insurance and that for that reason it was necessary to determine whether there had been an’ accident from which the hernia had resulted, because if there had been such an accident, then the insurer would be liable for the medical expenses and for compensation during disability, whereas if ■there had been no such accident, then the employer, under its custom, would itself bear the expense of the operation and would pay the full salary of the employee during his ’ disability.' At that time Jar-nagin made a full statement which" was written down by an adjuster and then read to him. At the bottom-of the first page of this statement Jarnagin signed his. name áñd at the bottom of the second page, in his own hand, he wrote:' “I have read these two pages arid they are correct.” And he again signed his name.
In this rather lengthy statement appears the following:
“* * * I can’t recall any specific time or accident when I might have got the hernia. I remember that when they examined me the time before *659 that, the doctor said I had a slight rupture but he told me not to worry about it. * * * I can’t recall an accident either before or after the discovery of the hernia that might have brought it on. * * *”
When confronted with this statement, Jarnagin was at first inclined to suggest that the words used were those of the adjuster and not his own and that he had merely made a general statement and that the adjuster had then written it down. He says that the adjuster “didn’t try to pin me down.” However, later he admitted that everything "which appeared in the statement was correct. He was asked whether the statement “is true as written”, and he answered, “Yes, sir.” He was:then told:
■ “Mr. Jarnagin, I am giving you every opportunity to point out to me wherein there is any untrue statement in this statement,” ,
and, after a discussion, was .again asked whether the statement was correct. He answered, “Yes, sir.”
In April, 1951, which was about four months after the day on which the accident is alleged to have occurred, the plaintiff was examined by Dr. Becker and Dr. Becker states that he took the “history” from the plaintiff and asked whether there had been any unusual occurrence such, as trauma, and that, the plaintiff told him that there was “no known trauma,” and that there had not been any unusual history. Shortly after that, when the situation was discussed by plaintiff with Mr. McLough-lin, plant manager, he was told about the hernia again and Mr. McLoughlin testified that he asked plaintiff if there had been any unusual occurrence and that he stated that “he knew of no accident; he knew of nothing that caused the condition.”
Our conclusion is that the record does not show that the hernia from which plaintiff has suffered for some time was caused by an accident on the date alleged by him.
While it is not alleged that the hernia, if it existed prior to the date of the alleged accident, was aggravated by that accident, that argument was made by' counsel before us, and we have therefore endeavored to determine whether, as a result of anything which occurred during employment there was any aggravation of the pre-existing condition of plaintiff. Our conclusion is that the hernia, which existed long prior to the date of the alleged accident, was found on subsequent ‘ examination to be in about the same condition in which it was when first discovered in May, 1950.
We thus conclude that even if there was any such occurrence as that testified to by plaintiff, it did not adversely affect the condition which had been in existence for sometime prior to that alleged occurrence.
We have not overlooked the conclusion reached nor the reasons given in Custer v. Higgins Industries, Inc., La.App., 24 So.2d 511, 513, in which we affirmed a judgment in favor of plaintiff, although there had been no accident as the word “accident” is usually understood. There we said:
“* * * Nothing slipped, nothing broke, nothing unusual happened, except that on that day, for the first time, the employee felt pain in his abdomen. It seems, from the record, that he was doing his usual ordinary work in the usual ordinary way exactly as he had done that work on many earlier occasions. The reason why on that day something happened was not because anything in his work went wrong, but simply because within the man himself there had taken place a change, as a result of which he was unable to withstand the pressure against his abdomen caused by his placing his elbows against it.”
In the Custer case there was an actual occurrence which could be pointed to as the reason for the condition of the employee. Here there was nothing which could be described as ail accident. There was no time which could be pointed to as that at which the plaintiff’s condition changed. In fact, nothing of any kind *660 ■occurred between the time of the first discovery of the hernia and the time at which the employment of plaintiff was discontinued. The record makes it abundantly clear that even at that time plaintiff was told that if he would submit to an operation the cost thereof would be borne by the employer and his salary during disability would be paid. However, at that time he had already employed an attorney and he preferred to continue with the litigation.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.