REGAN, Judge.
Plaintiff, John Washington, employed as a longshoreman, instituted this suit against the defendants, Atlantic & Gulf Stevedores, Inc., his employer, and The Fidelity and Casualty Company of New York, the insurer thereof, endeavoring to recover workmen’s compensation at the rate of $30 *715 per week for a period of 300 weeks, together with $1,000 for medical expenses, 12% of the amount of the judgment as penalties and $1,000 as attorney’s fees, for “total and permanent” or “permanent partial disability” caused from injuries incurred on April 16, 1954.
Defendants answered and admitted the occurrence of the accident and resulting injuries to plaintiff’s "abdominal region”, but asserted that as of May 17, 1954, he had fully recovered from the effects thereof; that the amount of compensation paid to him prior to “the medical discharge to return to work amounted to 3% weeks compensation at $30.00 per week or $95.00 and $147.25 in medical payments” which was all the compensable disability benefits that plaintiff was legally entitled to receive.
From a judgment awarding plaintiff compensation at the rate of $30 per week for a period of 24 weeks, together with 20% attorney’s fees, both plaintiff and defendants have prosecuted this appeal.
The record reveals that on the day of the accident the plaintiff was actively engaged in transporting heavy bales of burlap on a hand truck. In attempting to unload the truck a bale fell back upon the truck causing the handle thereof to strike him in the right abdominal region which simultaneously pushed his back against a “stack of burlap.” A short time thereafter he endeavored to resume work but his injuries caused him to decide to return to his home. He was then given a “slip” authorizing him to procure the services of the defendants’ physician. However, he remained at home on Friday (the day of the accident), Saturday and Sunday. On Monday he visited the offices of Dr. Samuel Romano for treatment, who testified that the plaintiff related a history of injury to the abdomen-which occurred when the handle of a truck: “jugged” him. The diagnosis was contusion of the abdomen. Dr. Romano related that the patient did not initially complain of an injury to his back or at any subsequent time during the course of ten visits to his office. However, this assertion is denied by the plaintiff. Dr. Romano did not observe any evidence of serious injury and when the patient’s complaints and his findings became irreconcilable, he discharged him on May 17, 1954, without disability. Plaintiff admitted that when this physician discharged him he was “near about well.”
In any event, on May 19, 1954, plaintiff visited the offices of a physician of his own choice, Dr. Blaise Salatich, who, through the medium of x-rays, observed rotational scoliosis, wedging and hypertrophic arthritis in the lumbar region of the back, which he conceded existed before the accident, but which he maintained was aggravated by the accident. He asserted that the plaintiff would be able to resume his occupation, but only with difficulty or on a restricted basis— that he could perform his duties one day, two days, but not day after day.
Dr. Edgar Little, a radiologist, appeared on behalf of defendants and stated that x-rays of plaintiff’s lumbar spine revealed scoliosis and hypertrophic changes which, in his opinion, existed prior to the accident in April of 1954 and were usual in middle-aged laborers or a man fifty-two years of age.
Dr. Mims Gage, a surgeon, appeared on behalf of defendant and related that he examined plaintiff in June of 1954, who complained of pain in the abdomen, back, thighs and legs. He could find no pathology or condition which surgery could remedy. However, he was of the opinion that “it’s possible that he did have some sacroiliac strain, but this was not due to the accident * * * except it was aggravated by it. I’m sure that there will be no permanent disability from this injury. * * * I would think that four or five months * * * would clear it up.”
Dr. Harry Morris, an orthopedic specialist, also appeared on behalf of defendants and reláted' that the plaintiff visited his office in August of 1954 and in March of 1955. This physician, predicating his opinion on the history revealed by the patient,, the x-rays and the clinical examination, asserted :
*716 “ * * * I thought he had recovered from his aggravation of any injury, and that he was in the same condition that he was in previous to his injury and that he could go back and do the same thing in the same manner that he could do before he was injured.”
With respect to the aggravation of the preexisting condition of plaintiff’s back and the duration thereof, Dr. Morris stated “I felt that they had subsided four months after his original injury. * *
Counsel for plaintiff contends that the trial judge erred in not. awarding his client compensation predicated on ‘,‘total and permanent” or, ■' at least, “permanent partial disability.” .
Counsel'for the defendants, on the other hand, insist that the trial judge erred in awarding plaintiff six months compensation in view of the fact that the medical evidence preponderated to the. effect that the duration of plaintiff’s disability was four or five months; and that he further erred" in awarding attorney’s fees predicated on the assumption that the defendants acted arbitrary and capricious in terminating compensation payments.
The trial judge found as a fact, as reflected in his written reasons for judgment, that:
“The x-rays and medical testimony leave no doubt at the time of the accR dent plaintiff had a pre-existing scoliosis and hypertrophic'changes with osteoarthritis which is' to be expected in a man 52 years old as part of the aging process. *' * * Plaintiff actually had an aggravation due to the trauma suffered when he was working and had the injury as described. * * * The law is well settled that a preexisting organic or other ailment that is aggravated as the result of a trauma * * * is compensable.
“The medical testimony is overwhelming that any disability or aggravation of the pre-existing injury should have cleared up not later than four or five months.”
 Our analysis of the record fails to disclose any error in the foregoing factual or legal conclusions, nor do we believe that the trial judge abused his discretion in awarding six months’ compensation rather than five months in view of the acknowledged fact that medicine is an inexact science and a physician’s prognosis .of four or five months disability is, therefore, not offered with such certitude or assurance that would militate against the reasonable exercise of the trial judge’s discretion in allowing.the recovery of compensation for thirty additional days beyond the physician’s forecast. However, we do believe that the trial court erred in awarding attorney’s fees as a penalty presumably in conformity with LSA-R.S. 22:658 and the case of Wright v. National Surety Corporation, 1952, 221 La. 486, 59 So.2d 695.
When plaintiff was discharged by Dr. Romano on May 17, 1954, and compensation payments terminated as of that date, there was no indication that plaintiff had even injured his back. How could the attitude of defendants, who acted upon the advice of Dr. Romano, be deemed arbitrary and capricious relative to an injury which neither they nor the doctor knew existed? When compensation ceased plaintiff’s only complaint, according to Dr. Romano, was in his abdominal region. We believe that under these extenuating circumstances defendants were justified in refusing to pay further compensation to the plaintiff after May 17, 1954.
For the reasons assigned the judgment appealed from is amended so as to disallow the .twenty percent attorney’s fees and, in. all other respects, it is affirmed.
Amended and affirmed.