REGAN, Judge.
Plaintiff, Mrs. Alvera Doane Lopez, Sr., employed as a post press operator, instituted this suit against the defendants, McElhiney Lithographing- Company and its insurer, Employers Liability Assurance Corporation, Ltd., endeavoring • to recover ' workmen’s compensation at the rate of $35 pér week *782 for a period of 400 weeks, together with medical expenses, attorney’s fees and penalties, -for total and permanent disability incurred as of April 13, 1959, by virtue of the aggravation of a pre-existing back ailment.
The defendants answered and admitted the employment of the plaintiff, but denied that an accident occurred; or if one did occur, that the plaintiff did not incur any disability as a result thereof.
From a judgment awarding plaintiff compensation for a total of 29 weeks [1] at the rate of $35 per week, medical expenses in the amount of $812.50,[2] penalties on past due compensation, and $250 attorney’s fees, the plaintiff has prosecuted this appeal. The defendants have answered the appeal requesting that plaintiff’s suit be dismissed; and in the alternative, that the judgment be amended by denying to plaintiff the right to recover penalties or attorney’s fees.
The record reveals that the plaintiff, age 35, was married and the mother of two children. She had been employed as a post press operator by the defendant printing "company from November, 1953, until she ' voluntarily terminated her employment on April 28, 1959.
.The nature of her work consisted of inserting .a small imprinting plate in an automatic printing machine; placing envelopes on the feeding table; removing them after they were printed; and returning them, to their respective cartons. In the course of her work, it was necessary that she bend and stoop. When the stock boy 'was not available to supply her with the cartons of envelopes, which weighed between 30 and 35 pounds, plaintiff procured them herself. She related that such was the situation on April 13, 1959, when she injured her back. She testified that she had complained of her backache to several co-employees, but she did not inform her superior thereof that day,[3] but completed her work even though she was in pain.
On her way to work the next morning, which was April 14th, she said that she saw Miss Florence Eiermann, a co-owner of the defendant printing company, “on the bus,” and at that time informed Miss Eiermann of her back injury sustained the preceding day.
At the trial, Miss Eiermann, Emile Sanchez, also a co-owner, and three co-employees of the plaintiff testified. In essence they stated that the plaintiff had made intermittent complaints about her backache since she was first employed but that she had never attributed her illness to the nature of her work. They could not say that the plaintiff had suffered any type of “accident” on April 13, 1959, and they did not remember whether she had complained more about her backache as a result of what had occurred on that day than any other day since, to reiterate, she chronically complained thereof. Miss Eiermann specifically denied any recollection of plaintiff’s conversation with her on April 14th, relative to aggravating her back ailment on April 13th.
On April 28, 1959, following an exchange of unpleasant words between the plaintiff and Sanchez, she “quit”, and asserted in explanation thereof that she told Miss Eier-mann that she was still suffering with her back as a result of work performed on April 13th, and that she would not, in addition to this ailment, subject herself to further in- *783 suits. Miss Eierniann denied that plaintiff had even discussed her back ailment on this occasion.
On May 4, 1959, plaintiff related that she visited the offices of the Louisiana State Employment Service in an effort to obtain less tedious work and offered to an employee thereof as a reason for leaving the defendant’s employ, “Quit- — insulted by boss.”
On May 6, 1959, while at home engaged in dampening clothes in preparation for ironing, she sneezed and incurred a severe back pain which radiated into her left leg.
On May 9, 1959, she consulted Dr. Rufus H. Alldredge, an orthopedic surgeon, who diagnosed her condition as a “degenerating lumbosacro disc nerve root irritation, and compression lumbarsacro back sciatica.” She was hospitalized from May 9th to May 25, 1959, and responded favorably to conservative treatment which had been prescribed for this condition. She remained under the care of Dr. Alldredge until November 30, 1959, when she was discharged as being fully able to resume her former employment.
During the time that plaintiff was being treated by Dr. Alldredge, and unknown to him, she consulted Dr. Bryon N. Unkauf, also an orthopedic surgeon, on September 28, 1959. He suggested that a myelogram be performed on November 23, 1959, under the supervision of Dr. Arthur R. Payzant, a radiologist. As a result thereof, the diagnosis of a ruptured intervertebral disc was made, which was agreed to by Dr. Alldredge after he had been informed thereof and had an opportunity to review their findings.
All three doctors appeared on behalf of the plaintiff. They related, in substance, that they were unable to state with any reasonable certainty the cause or -the- date of the inception of the herniated disc. Drs.-Alldredge and Unkauf, the treating -physicians, pertinently observed, however, that a sudden sneeze could cause a dormant herniation to manifest itself, and in effect it was their opinion that the aggravation of plaintiff’s back ailment was probably not job-related; although they did concede that stooping, bending, and lifting are activities that could aggravate an intervertebral disc.
The plaintiff admits that she possesses a history of back ailments[4], and acknowledges that the “accident” which occurred on April 13th was not a single dramatic incident, but rather, the “accident” was a cumulation of the day’s tedious activities that aggravated a pre-existing condition of her back, and that this aggravation provided the requisite strain to herniate the dormant disc.
The defendants, on the other hand, insist that no accident occurred on April 13th, and that there was no aggravation of the pre-existing illness caused by the nature of her employment; furthermore, they point out that the precipitating cause of the herniated disc was the sneeze plaintiff experienced at her home eight days after the termination of her employment, that it was consequently non-employment related, and therefore plaintiff should be denied recovery.
Predicated upon the foregoing facts and the contention of the plaintiff, the trial judge expressed the opinion that the: “* * * plaintiff has a degenerating L-5 disc; that this condition is of long standing, and is not the result of any accident or injury suffered while plaintiff was at work for McElhiney (the defendant).
“Considering all of the evidence, I must conclude that plaintiff’s work temporarily *784 aggravated her back condition, and that her sneezing accident of May 6, 1959, at home, further aggravated her condition; * *
“There is no dispute that the aggravation of a pre-existing injury is compensable under the Compensation Law, but recovery should not continue beyond the termination of such aggravation, especially when the fact of aggravation is suspicious and could very well have been caused on other occasions not work-connected.
“It must be remembered that plaintiff is married and was living with her husband all' through her employment with McElhiney, and that her marital duties may very well-have contributed, if not. caused, her present condition.”
The only question which this appeal has posed for our consideration is whether the trial court’s finding of fact that “the plaintiff’s work temporarily aggravated her back condition” is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that the trial court erred in finding as a fact that the plaintiff’s work temporarily aggravated a pre-exist-ing back ailment.
Before we initiate a discussion of the specific problem posed herein, it may be well to reiterate the rationale of the existing jurisprudence to the effect that an employer accepts an employee as he finds him, and if the employee has a pre-existent disease that is aggravated by his or her employment, the Workmen’s Compensation Act affords coverage for this aggravation, and the question of determining the occurrence of the aggravation is purely an inquiry of fact. Thus, the plaintiff in a compensation case endeavoring to establish the aggravation of a pre-existing ailment, must, like other plaintiffs in civil actions, prove his or her claim by a preponderance of the evidence and mere speculation as to possibilities is not sufficient to permit the plaintiff to recover, even under the relaxed rules of pleading and evidence peculiar to workmen’s compensation suits.
Generally all problems relative to-proof of causation of back injuries arise in cases, such as this, where the defendant employer contends that the plaintiff employee’s disability resulted from a preexisting disease rather than a job-related injury. Medical experts usually concede that there exists a deceptive similarity between the symptoms of trauma and disease in back ailments, and it follows that in such cases the decision of the court largely depends upon the testimony of the physicians. Frequently, the court, if it is unable to se-’ cure any assistance from the conflicting medical testimony, will in the last analysis, rely upon the testimony of the plaintiff and his or her eye witnesses to establish as a fact that at some definite time while on the job the plaintiff’s pre-existing back ailment was aggravated.
Fortunately this case has posed little, if any, of the foregoing dilemmas since both the medical experts and the lay witnesses are relatively in accord with respect to the fact that the aggravation of plaintiff’s preexisting back ailment was not job-related.
To reiterate, we are of the opinion that the plaintiff has not sustained the burden of proof. She has conceded a long history of bade trouble and has predicated her claim for compensation upon injuries sustained on April 13, 1959. Her employers and co-employees did not corroborate her statement that she had complained of unusual pain as a result of extraordinarily strenuous work on that day. Furthermore, she reported no “accident” as such to her employers and made no demand on them for compensation until July 21, 1959, which was more than three months after the alleged “aggravation” and was done through the medium of a letter addressed by her to the defendant insurer.
For a period of approximately two weeks after the day of the alleged accident, the plaintiff reported regularly to work and completed each day. On April 28, 1959, she terminated her employment because of a totally unrelated, reason, namely, an *785 altercation with her employer. She undoubtedly felt well enough to work since she applied for another job on May 4th, and it was not until May 6th that she had any severe or crippling pain in her back, and that was the immediate result of “a sneeze” while in her home. In our opinion that was the inception of her disability and it occurred eight days after she had terminated her employment.
For the reasons assigned, the judgment appealed from is reversed.
Reversed.

. A total award of $1,015 was made to the plaintiff covering' a period of time from May 9, 1959, which was three days after the sneezing episode, to November 30, 1959.

. This included an expert fee in the amount of $50 for each of the three doctors.

.In August, 1956, plaintiff had sustained a minor injury to her foot while in the defendant’s employ, had reported the accident immediately and received treatment therefor by the insurance company doctor. We point this out for the significant purpose of showing that the plaintiff was well acquainted with the fact that job-related accidents should be reported immediately.

. Plaintiff had a long history of suffering with hack pains, probably from a variety of causes. A 1947 Charity Hospital record shows a history of back pain; a 1957 Touro Infirmary record covers back pains; a 1959 Touro Infirmary record states that plaintiff had backaches for about four years; and the testimony of plaintiff’s co-workers established that the plaintiff had complained of backaches off and on during her entire employment.