SAMUEL, Judge.
This is a suit for workmen’s compensation. Plaintiff, a 65 year old man at the time he allegedly suffered his injury, had worked as a longshoreman for more than 30 years. The basis of his claim is an accident which he says occurred on December 15 while working as a longshoreman on a New Orleans dock in the employ of the defendant.
The job was being performed by a “work gang” consisting of several men, one of whom operated a scale and another a lift truck. Plaintiff’s duties required him to roll or skid 100 lb. feed sacks to a fellow worker who started them down a chute. He testifies that while so engaged he was struck in the back and knocked down by the loaded lift truck; that the accident was reported to his foreman when the latter arrived from a ship’s hold in about twenty minutes; and that he then was sent to a company doctor.
Plaintiff received treatment from the company doctor for a period of about two weeks. At the end of that time he was referred to specialists who administered treatment for approximately three months and then discharged him as being able to return to his former employment. He received workmen’s compensation to the date of discharge. However, plaintiff did not return to work. Claiming that the back pain persisted, he consulted, and was treated by, his own physicians and now asserts he is permanently disabled as a result of an aggravation of a pre-existing arthritic condition.
*361 The trial court dismissed the suit for the reason that plaintiff had not borne his burden of proof and plaintiff has appealed.
It is well settled that, even under the rules peculiar to workmen’s compensation suits, the plaintiff in a compensation case must prove his claim by a preponderance of the evidence. Lopez v. McElhiney Lithographing Co., La.App., 130 So.2d 781; Sims v. Times-Picayune Publishing Co., La.App., 128 So.2d 444; Montgomery v. Walter Kellogg Lumber Co., La.App., 120 So.2d 353.
It is also well settled that there can be recovery of compensation where the accident aggravated or accelerated a dormant physical condition and thus produced disability. Circello v. Haas & Haynie Corp., La.App., 116 So.2d 144; Washington v. Atlantic & Gulf Stevedores, La.App., 85 So.2d 714; Custer v. Higgins Industries, La.App., 24 So.2d 511.
We are thus presented with two problems : First, has the plaintiff failed to carry his burden of proving the occurrence of an accident while in the employ of the defendant?; and Second, if plaintiff has succeeded in proving the occurrence of such an accident, has he failed to carry his burden of proving that the accident resulted in injuries preventing him from performing his work either permanently or beyond the date of his medical discharge?
Only two witnesses, the plaintiff himself and John Antoine, Jr., the lift truck operator, testified concerning the actual occurrence of the accident and their testimony is conflicting. Plaintiff’s version is that Antoine brought in the loaded lift truck and struck plaintiff with the lift as it was being lowered, mashing plaintiff down, and that Antoine raised the lift and backed the truck off when the plaintiff “hollered”. On the other hand Antoine, who was plaintiff’s witness, testified that he had not hit anyone to his knowledge nor did he hear anyone scream or yell; that he never knew he had struck or knocked a man down although ordinarily he would find this out if it happened; that he came in with his: loaded truck when someone told him it was all right to do so, was told to “hold it”' at a time when the lift was not down, stopped, waited until he was told to proceed, then came in, put the load down, backed up and went back out.
We attach no great importance to this discrepancy. Antoine’s view forward was blocked by the load the truck was carrying; the accident, at least at that time, was not of such a serious nature as to cause the work by others to be stopped; and the plaintiff himself could not reasonably be expected to have personal knowledge of all of the details in view of the fact that he was struck in the back. Nor, considering all factors involved in the trial of the case, do we attach any great importance to the fact that plaintiff failed to call the foreman and other workers as witnesses. The record fails to show that these prospective witnesses were not as available to the defendant as they were to plaintiff and, especially in view of the present finding on the question being discussed, they could and should have been produced by defendant if the defense as to proof of occurrence is serious and has merit.
On the other hand, plaintiff did receive almost immediate treatment and care from the company physician, who discovered a contusion of the back, itself an objective finding of the occurrence. Since the treatment was received as a result of one of plaintiff’s superiors sending him to the doctor, it is apparent that the accident was reported to and known by the defendant. In addition, plaintiff worked for some time on the day of, and prior to, the accident, and, when first seen by the company doctor almost immediately thereafter, that doctor must have been of the opinion that plaintiff could not return to work at the time. Plaintiff did not so return and there is no evidence which might indicate the company felt that he could or should do six *362 All the actions of the company leave no doubt in our minds that they accepted the occurrence of the accident as a fact. We are of the opinion that such occurrence has been sufficiently proved.
Proof that the accident was the cause of the disability for which compensation is now claimed is quite another matter. Plaintiff’s testimony is to the effect that even after his discharge by the doctors his back continued to swell, he was unable to bend over or pick up anything, and he has never been able to return to work. On every visit he would show the doctors where his back was swollen. And he insists that there never has been, and is not now, anything wrong with him except such as may be the result of the accident.
Plaintiff is simply mistaken about his general physical condition. It is quite clear from all of the medical testimony that none of the doctors found the swelling of which he complains, and unfortunately, as will be pointed out later, he was suffering from various ailments unrelated to the accident.
Plaintiff’s wife testified that he had not worked and has been unable to work since the accident; that he had never complained of his back before but now frequently complains about his back and stomach.
In addition to these two lay witnesses, five medical experts testified, two for plaintiff, Dr. Braden, a general practitioner, and Dr. Unltauf, an orthopedic surgeon, and three for defendant, Dr. Gilder, a general practitioner, Dr. Winokur, a physiatrist, and Dr. Soboloff, an orthopedic surgeon. The medical history, and the testimony of these doctors, is as follows:
Dr. Gilder was the company physician Vho first saw plaintiff on the date of the accident. He diagnosed the case as a lumbosacral contusion and administered treatment for about two weeks after which time, as a result of insufficient recovery and continued complaints of pain, he referred the patient to Dr. Soboloff, The latter gave plaintiff an orthopedic examination and immediately referred him to Dr. Winokur for treatment.
Dr. Winokur found plaintiff had marked spacity (muscle spasm) over both para-lumbar groups and a localized tenderness over the lumbosacral joint. He saw plaintiff five days a week for a total of 49 visits and treated him with diathermy, ultra-sound massage, and postural exercises. He testifies that plaintiff improved under this treatment until, having regained full painless range of motion in his back (plaintiff’s only complaint at the time being shortness of breath which, the doctors agree, could not have been caused by the trauma), and being free of back muscle spasm, he was discharged on March IS.
Dr. Soboloff’s first examination on January 5 revealed that plaintiff had difficulty in moving his back through a full range of motion and could not hyper-extend the back without pain. X-rays received along with the patient were normal with the exception of degenerative arthrosis. He sent plaintiff to Dr. Winokur for daily therapy and checked him at regular two week intervals on February 2, February 16, March 2, March 16, and, shortly before the trial, on February 2 of the following year. Plaintiff improved slowly and, the examination on March 16 being completely negative, he was discharged by Dr. Soboloff on that date. This witness pointed out that it is possible to determine whether or not there has been an aggravation of the arthritic condition by a comparison of x-rays; any increase would be noticeable after a lapse of nine months or a year. A comparison of x-rays taken shortly after the accident with others taken more than a year later reveals that the lumbosacral joint disease was no worse and had returned to its former state. Dr. Soboloff was of the firm opinion that from an orthopedic standpoint plaintiff had made a complete recovery to the extent that on March 16 his condition was no worse than it had been immediately before the accident and that he could return to work as a longshoreman. Pie admitted that plaintiff was *363 unable to do heavy longshoreman’s work hut attributed this to other factors and not at all to the injury. He was careful to point out that plaintiff was able to perform any work which he had been able to perform at the time of the accident.
Dr. Braden was seen by plaintiff shortly after his discharge by Drs. Winokur and Soboloff. Although plaintiff’s only complaint was about his back, this witness immediately hospitalized him for treatment of a duodenal ulcer and extremely high blood pressure. Dr. Braden also discovered a heart condition. He did not treat plaintiff for his back but, after the hospitalization had continued for about 20 days, called in Dr. Unkauf for that purpose.
Dr. Unkauf first saw plaintiff on May 3 and found that he had practically recovered from the back contusion and strain which aggravated his pre-existing osteoarthritis. Local heat and exercise were advised. At that time this doctor was of the opinion that plaintiff could carry on his usual employment. He saw the patient again on June 9 because of continued complaints of pain in the lower back area. On that date he felt the patient was not quite fit to return to work but should be able to do so with very little more treatment. He saw plaintiff again in July, in October, and finally in February of the next year shortly before the trial. His findings were generally negative on all of these occasions and in July he was of the opinion that there was no permanent disability as a result of the injury. Although on each of these last visits he did find slight improvement, he also found slight pain, and his final opinion was that plaintiff was unable to perform the heavy work of a longshoreman. However, Dr. Unkauf was also of the opinion that plaintiff “could do a longshoreman’s job which was of a light nature”.
We do not find the two orthopedists in serious conflict on the question at issue here. Dr. Soboloff feels that plaintiff can return to whatever type of work he was doing at the time of the accident. Dr. Un-kauf feels that the plaintiff can do longshoreman’s work of a light nature. We are satisfied from the record that the work being done by plaintiff at the time of the accident was light in comparison to the work usually done by a longshoreman. The conclusions of the two doctors are essentially the same. Plaintiff has not only failed to carry his burden of proof, the evidence actually preponderates to the effect that any aggravation of the arthritic condition which may have been caused by the injury suffered in the accident had subsided at the time of his medical discharge and plaintiff is not entitled to compensation.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.