SAMUEL, Judge.
This is a suit for workmen’s compensation against plaintiff’s employer and, by supplemental petition, the latter’s insurer. The petition alleges that plaintiff was permanently and totally disabled as a result of an accident, sustained during the course and scope of his employment, which caused a recurrence of a previously sustained and corrected ruptured intervertebral disc. The trial court rendered judgment in favor of defendant and dismissed the suit for the reason that plaintiff had failed to prove the occurrence of the accident of which he complains. Plaintiff has appealed.
It is well settled that there can be recovery of compensation where the accident aggravated or accelerated a dormant physical condition and thus produced disability. Hicks v. Arkansas Louisiana Gas Co., La.App., 136 So.2d 313; George v. United Fruit Company, La.App., 131 So.2d 360; Ross v. General Const. Co., La.App., 49 So.2d 56.
It is also well settled that the plaintiff in a compensation case must prove his claim, including the occurrence of an accident and a resulting compensable injury, by a preponderance of the evidence. Franklin v. Old Colony Insurance Company, La.App., 150 So.2d 892; Levatino v. American Mutual Liability Insurance Co., *76 La.App., 150 So.2d 88; George v. United Fruit Company, supra; Prothro v. Lumbermens Mutual Casualty Company, La. App., 121 So.2d 848.
Plaintiff was a truck driver and delivery man for a paint distributor. His duties involve loading and unloading cans, cartons, cases and drums of paint and paint thinner and delivery thereof to customers in and around the City of New Orleans. The containers ranged in size from small cans to 16 and 32 pound cases and 52 and 55 gallon drums. Several months after plaintiff’s employment commenced he asked the management if he could be relieved of loading and unloading shipments because he was afraid that lifting heavy objects would cause his back to bother him. The management discussed this with the other drivers and they agreed to do the heavy lifting. However, plaintiff drove the truck without a helper and, while he did no heavy lifting on the employer’s premises, he had to unload deliveries for the customers by himself if no one was available to help him. He worked for the defendant employer from April, 1958 to July, 1960.
Plaintiff had sustained a ruptured inter-vertebral disc in 1955 while working for another employer. He underwent surgery, a laminectomy, in 1956 and obtained an attorney and a settlement of $7,500.00 in workmen’s compensation, tie did not disclose this previous injury at the time of his employment by the employer-defendant herein.
The only evidence relative to the occurrence, of the accident forming the basis of this suit is the testimony of the plaintiff himself. He stated vaguely that sometime during the latter part of June, 1960 he suffered an injury to his back while he was “heading up” a drum. We quote some pertinent portions of his testimony:
“Q. Do you know what day of the week this alleged accident occurred ?
“A. No, sir, I do not.
“Q. Do you know what time of day the alleged accident occurred?
“A. (Witness shakes head negatively-)
“Q. You don’t know?
“A. Not what time of day, no sir.
“Q. You don’t know whether it was in the morning or the afternoon, do you ?
“A. I really do not because, I mean, handling the different objects you handle them through the day, one day to the other, one gallon, fifty-two gallons, and it’s hard for you to know really what time—
“Q. Were any witnesses present when this occurred?
“A. Well, there wasn’t no witness, because I been on my truck by myself. I do all my delivering myself. Each driver do his own delivering.
“BY THE COURT: Where do you contend this happened, in the shop or on the truck?
“A. On the truck.
“BY THE COURT: Where were you, what part of the city, do you know that?
“A. I don’t recall, Judge, Your Honor, just what part of the city.
“BY THE COURT: Well, what happened to you?
“A. Well, what really happened, I was lifting a drum. You see, sometime we load the drum—
“BY THE COURT: I understand they are fifty-five gallon drums. You tell me what happened to you.
“A. Well, I recall lifting the drum to stand it up on the head, be *77 cause you see they roll from one side of the truck when it’s lying down; and on this time, lifting the drum, I had a pain went through my back, hut at the time I didn’t think it was anything seriously. So, I just forgot about it, and later on I started getting pains in my hack; and as the pain kept coming harder and harder, that’s when I went to Mr. Hozenthal and told him about my back condition.
“BY MR. WICKER:
“Q. Where were you going when , this accident occurred?
“A. I can’t recall where I was going.
“Q. You don’t know where you were making a delivery?
“A. No sir.
“Q. Were you making a delivery?
■“A. I could have been making a delivery, or I could have been preparing the drum to make a delivery, any one of those things could have been possible.
■“Q. You don’t know whether or not you were making a delivery at the time this accident occurred?
■“A. I could feel that I was making a delivery. Probably I was, because I usually deliver a drum. Every one that’s put on my truck, I have to take it some place.”
Plaintiff never reported the alleged accident to his employer. He took his vacation the first week in July and returned to work for one week following the vacation. He was paid for that week and worked approximately four hours the following Saturday on which day he was given a C.O.D. order to deliver. He never returned to work or to collect his pay for the four hour time nor did he turn in to his employer the money collected from the C.O.D. delivery. Plaintiff testified he reported the accident and denied that he returned to work after his vacation commenced; but the evidence as a whole clearly establishes the contrary. He received and cashed a pay check for the week in question and we are satisfied that his employer was not informed of an accident until this suit was filed almost a year after its alleged occurrence.
We deem it unnecessary to mention additional discrepancies, and there are several, in plaintiff’s testimony. Three other matters appear to us to be significant and, when considered in connection with all of the facts and circumstances here involved, conclusive. These are: (1) Although the record contains the testimony of some lay witnesses produced by the plaintiff and including, among others, his wife and married son with whom he lived, that testimony fails to establish, support or even mention the occurrence or the effects of any accident upon which the present claim could be based; (2) Plaintiff’s previous laminectomy had been performed at Charity Hospital in New Orleans where he had received attention and treatment on many occasions following that operation and the accident which required the surgery. On numerous occasions after leaving the employment here involved he returned to Charity with complaints about his back. Yet the complete hospital record fails to reveal any complaint or mention by the plaintiff to any of his examining or treating physicians of the occurrence of the accident upon which he bases his present claim. We are satisfied plaintiff did not tell his doctors that he had had an accident subsequent to his operation and it is extremely unlikely that he would have failed to mention such an accident if one had actually occurred; (3) Some of the medical testimony contained in the record attributes plaintiff’s difficulties solely to the old injury and the subsequent operation and all of the medical testimony is to the effect that plaintiff’s condition could result from the first injury and operation alone.
*78 The rule that the conclusions of the trial judge on questions of fact involving the credibility of witnesses will not be disturbed unless manifestly erroneous is applicable to workmen’s compensation cases. Levatino v. American Mutual Liability Insurance Co., supra. In the instant case we agree with the finding of fact by the trial judge.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.