CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability. From an adverse judgment on the merits plaintiff appeals.
The facts show the accident occurred on June 24, 1962 while plaintiff was working as a derrick man for Circle Drilling Company. As he was running down a flight of steps from the derrick floor to the shale shaker, his feet slipped from under him. He fell on his back and slid down to the bottom of the flight of 8 or 10 steps. He suffered immediate pain in his back, but continued to work the remaining 2 or 3 hours of the shift. Then he drove to his home in Mansfield, Louisiana.
The sole issue on appeal is whether plaintiff was disabled beyond December 14, 1962 on which date workmen’s compensation payments were discontinued. This is a factual issue requiring evaluation of conflicting medical and lay testimony.
There is no dispute as to the applicable law. The jurisprudence is established that a workmen’s compensation claimant has the burden of proving his case with reasonable certainty by a preponderance of the evidence. Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878. In Hall v. Liberty Mutual Ins. Co., La.App., 153 So.2d 553, several rules are succinctly stated:
“In evaluating medical testimony courts are guided by certain accepted and well established principles. See Malone,. Louisiana Workmen’s Compensation §■ 286, pp. 366 ff. The testimony of the physician who examined an injured employee immediately following injury may be accepted in preference to the-opinion of one who examined him subsequently. Royer v. Carey, La.App., 145 So. 381. The opportunity for extended observation, such as that afforded the treating physician, gives added-credence, to the testimony of the medical expert. Anderson v. Peek, La.App., 102 So.2d 776; Walker v. Monroe, La.App., 62 So.2d 676. The specialist is preferred to the general practitioner regarding matters which fall within his field of specialization. Allen v. Coal Operators Casualty Company, La.App., 124 So.2d 344.”
 Also, the number of medical witnesses testifying for plaintiff or defendant is not necessarily controlling. The duty of the court is to seek the truth and evaluate-the medical witnesses by the same rules: that apply to other witnesses. Williams v. Southern Advance Bag & Paper Co., 87 So.2d 165 (2nd Cir.App.1956).
The district judge, in a very fair, thorough and able opinion, has given the following evaluation of the expert medical testimony, which we find to be fully sup *411 ported by the record, and which we adopt as our own:
“The first doctor who examined and treated the plaintiff herein was Dr. J. L. Grindle, a general practitioner of Mansfield, Louisiana, and whose deposition was taken on behalf of the plaintiff. He admitted the plaintiff on the ■next day after the accident happened ■and placed him in pelvic traction. 'The plaintiff remained in the hospital .about seven days and was treated for a while thereafter, and then was referred to Dr. Ray E. King, an orthopedist -of Shreveport, Louisiana. Dr. King ■also made an examination and prescribed treatment and returned him to Dr. ■Grindle, who last saw the plaintiff on .September 17, 1962. Dr. Grindle was ■of the opinion that the plaintiff should be able to resume his work within about two weeks from the date of his last ■report of June 30, 1962, and the substance of his letter of March 12, 1963 ■was that the complaints of the plaintiff were mainly subjective in nature and that he should have made a full recovery in a short period of time after he last saw him on September 17, 1962. 'Otherwise, the evidence of Dr. Grindle •does not enlighten the court very much :as to the total and permanent disability ■of the plaintiff as a result of the accident.
“Plaintiff was next seen by Dr. Ray E. King, an orthopedist of Shreveport, •Louisiana, who examined the plaintiff •on July 24, 1962. He made X-rays, which were negative, and diagnosed the injury as an acute lumbosacral sprain. In his succeeding examinations he •found no objective symptoms to indi■cate a disc injury and found no muscle spasm evident. He examined and treated him on the dates of August 28, 1962, September 18, 1962, September 28, 1962, October 3, 1962 and October 17, 1962. In these examinations he prescribed and administered treatment to the plaintiff and was the only orthopedist who treated the plaintiff, starting his examinations and treatments soon after the accident occurred.
“In view of the complaints of the plaintiff, and in order to satisfy himself that there was no disc injury, he recommended a myelogram, which was performed at Schumpert Sanitarium in Shreveport, and it was negative. It is recognized that a myelogram is not conclusive, but according to all of the testimony, it is at least seventy-five or eighty percent accurate. No further examination was made by Dr. King after October 17, 1962, when he pronounced plaintiff well and able to return to work.
“Plaintiff was next examined by Dr. Bennett Young, an orthopedist of Shreveport, Louisiana, on October 19, 1962 at the request of the insurer. He found a minor defect at L^l — 5 on the right side, which was apparent also in the myelogram, but was not a fracture but a congenital defect. I was rather surprised at the testimony of Dr. Young, who disagreed with all of the other orthopedists and neurosurgeons that there could be remissive symptoms in connection with a bulging disc, but it does not mean that his testimony should be disregarded entirely.
“These were the only medical examinations and treatments that occurred from the date of the injury on June 24, 1962 until the plaintiff was examined by Dr. R. D. Hightower on April 24, 1963, or ten months after the injury. Dr. Hightower examined him on April 24, 1963, July 5, 1963 and September 13, 1963, and his final opinion was that there was a ruptured disc at L-4 or L-5 on the right side. When he first examined him on April 24, 1963 as a private patient, he found no muscle spasm, that his complaints were largely subjective and he diagnosed the injury as a lumbosacral strain from which he was gradually recovering. Subsequent *412 ly, after this suit was filed on June 15, 1963, he examined plaintiff on July 5, 1963 and found muscle spasm and was of the opinion that plaintiff had a bulging disc on one side and suggested a laminectomy, which was never performed. On the date of his last examition on September 13, 1963, plaintiff was also examined by Dr. Hightower’s partner, Dr. D. F. Overdyke, an orthopedist, whose testimony failed to impress the court that it was of much probative value. His testimony was fraught with qualifications and reservations and dealt mostly in conjectures, probabilities and possibilities, minimizing the extent of the injury.
“Plaintiff was examined on behalf of the defendant by Dr. Willis J. Taylor, an orthopedic surgeon of Shreveport, Louisiana, on August 14, 1963, and he found his X-rays negative and that there were no objective symptoms of disability. He was of the opinion that the plaintiff was not disabled.
“On the same date he was examined on behalf of the defendant by Dr. Frederick C. Boykin, a neurosurgeon of Shreveport, Louisiana. He found no evidence of nerve root irritation or compression and no muscle spasm, and was of the opinion that plaintiff was not disabled.
“Plaintiff was next sent to Dr. Charles V. Hatchette, an orthopedist of Lake Charles, Louisiana, by his attorney. Dr. Hatchette examined him on May 3, 1963 and the report was that he found no muscle spasm; X-rays were negative, and he found nothing to indicate a disc herniation or nerve root compression, and he thought he would recover in five or six months. He was again examined by Dr. Hatchette on October 25, 1963 and he found muscle spasm on the right side and diagnosed it as nerve root compression of the fifth lumbar root. He suggested that he would like to perform a new myelogram and possibly an operation. While it was his impression that the plaintiff had a herniated disc, or if not, that he was disabled, he stated that if a new myelo-gram did not show this, that he would defer to it. He further suggested that ‘this thing should be cleared up’ and that if tlie plaintiff turned up with a negative myelogram on the second occasion, he would certainly defer any opinion he had regarding a disc rupture, and that it would cause a great deal of change in his opinion. (Hat-chette dep. p. 38). It will be noted that the plaintiff did not submit himself for the second myelogram to be given by Dr. Hatchette, but Dr. Hatchette did ask him to let him perform one. Dr. Hatchette further testified that so' far as the reflexes and tests that were used in his last examination, that those were negative (Hatchette Dep. p. 32). Also Dr. Platchette testified (dep. p. 40) that on his last examination that even though he was of the opinion that the plaintiff was disabled, that he would admit that he did not have sufficient information to be entirely confident in that opinion, but only as confident as he could be under the circumstances.”
* * * * * *
“I am convinced from the evidence that there can be a bulging disc which is difficult to diagnose, and that the symptoms can be remissive, but it would be a strain upon the belief of the most credulous to think that the symptoms would manifest themselves only upon examination by plaintiff’s doctors and would subside or be in remission when defendant’s doctors examined him on numerous occasions. I say this advisedly for the reason that I think that on the numerous occasions that Dr. King examined and treated him immediately after the injury, that these symptoms would not have been in remission upon all of these occasions as well as upon the occasion of the examination by Dr. Bennett Young on October 29, 196.2, *413 the examination by Dr. Boykin on August IS, 1963 and by Dr. Taylor on the same date.”
******
“After carefully considering the law and the evidence in this case, I am of the opinion that the plaintiff has failed to successfully discharge the burden of proof by a preponderance of evidence in this case, and do not find that the medical testimony taken by the plaintiff from examinations made ten months after the accident, and subsequent thereto, overcomes the weight and preference to be given to the testimony of specialists and treating physicians who examined and treated plaintiff soon after the accident, and other medical evidence on behalf of defendant, as well as the fact that the medical evidence of the plaintiff is more or less suggestive of possibilities, probabilities and conjectures.”
Plaintiff’s first argument on appeal is that the medical testimony alone preponderates in plaintiff’s favor. We cannot agree. We think the trial judge has correctly concluded plaintiff has failed to prove his case by a preponderance of the medical evidence.
Plaintiff’s next argument is that this is a situation where the expert medical testimony is in such conflict that we must look to the lay testimony to resolve the issue. Booker v. Phoenix Insurance Co., 124 So.2d 246 (2nd Cir.App.1960). The lay testimony consists of that of plaintiff, his wife, a colored man named Warren Carter who worked for plaintiff at various times as a carpenter’s helper, and plaintiff’s brother-in-law, S. M. Hatcher. These witnesses all gave testimony that plaintiff appeared to be disabled and that although he had continued to do light work since the accident, he did so in pain. This lay testimony shows that since the date of his injury, plaintiff has worked on his farm in Sabine Parish, cleared land, cleaned fence rows and plowed with his tractor; that he built a house for a Reverend Miers; and at the time of the trial he was doing carpenter work for Dr. Poinboeuf. Plaintiff and his witnesses contend he did only light work and somebody else did the heavy lifting. Plaintiff says even this light work was done in pain.
The trial judge saw and heard all of these lay witnesses. We certainly cannot say he was manifestly erroneous in failing to find that the lay testimony tipped the scales in favor of the plaintiff.
For the reasons assigned the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.