185 So.2d 109 (1966)
Eddie WILLIAMS
v.
NEW ORLEANS PAPER BOX COMPANY and Employers' Liability Assurance Corp. Ltd.
No. 2105.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1966.
*110 Garvey & Salvaggio, John A. Salvaggio, New Orleans, for plaintiff-appellant.
Drury & Lozes, James H. Drury, New Orleans, for defendants-appellees.
Before REGAN, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
This is a suit under the Louisiana Workmen's Compensation Act against plaintiff's employer and its compensation insurer for alleged total and permanent disability. There was judgment in the trial court dismissing the suit for the reason that plaintiff had failed to prove his case by a preponderance of the evidence. Plaintiff has appealed therefrom.
On January 2, 1964 plaintiff slipped and fell backward while pushing a hand truck loaded with cardboard. He sustained a ruptured intervertebral disc requiring surgical removal. On April 30, 1964 a successful laminectomy was performed by Dr. Howard Karr, a neurosurgeon. Plaintiff remained under the care of Dr. Karr until October 12, 1964, at which time that physician discharged him as being physically able to resume his normal activities and work. Plaintiff had been seen and treated by other physicians prior to the time he first saw Dr. Karr. After his discharge by that physician he entered Charity Hospital where he was examined and treated for hypertension, a kidney condition and a prostate gland condition. He testified that at that time he underwent prostate surgery, but this appears to be unlikely.
Plaintiff was paid compensation benefits at the maximum rate of $35 per week from the date of the accident to November 2, 1964. In the trial court counsel for the litigants stipulated that the accident was compensable at the maximum rate. The sole question before us on this appeal, and the only question which was before the district court, is whether the injury and the subsequent laminectomy aggravated a pre-existing osteoarthritic condition of plaintiff's spine and thus produced permanent and total disability under the act.
Only three witnesses testified during the course of the trial: the plaintiff himself; Dr. Howard Karr, a defendant witness; and Dr. Ray J. Haddad, Jr., an orthopedic surgeon called by plaintiff.
The pertinent portion of plaintiff's testimony is as follows: He was 45 years of age and had been working for the defendant-employer *111 "off and on" for many years. Prior to the accident he had never lost any time from work due to back pain, nor had he ever had any noticeable back pain or been treated by a physician for such a condition. But since the surgery necessitated by the accident he has experienced a nagging pain in the lower part of the back, continues to suffer from low back pain and, as a result of that pain, has not been able to work, not even to the extent of performing light tasks around the house. This witness testified to, and had told his own examining physician and witness, Dr. Haddad, some facts which are medically impossible even according to Dr. Haddad. In his written reasons for judgment the trial judge stated he was not impressed with the testimony of the plaintiff.
Dr. Karr first saw plaintiff on April 17, 1964, at which time he discovered the ruptured disc. Following the surgery on April 30, 1964 plaintiff's post operative course was uneventful and he was discharged from the hospital on May 9, 1964. One week later this physician found the plaintiff had some restriction on forward bending due to the post operative status and prescribed physiotherapy. Dr. Karr saw the plaintiff on September 30, 1964, at which time he felt plaintiff was not quite ready to return to work, and again examined him on October 12, 1964. On that last occasion he found no tilt or list in restriction of motion of the back, normal reversal of the curve on forward bending, no spasm, no straight-leg raising restriction, and other findings, all of which were within normal limits. Following this examination the doctor was of the opinion that plaintiff was physically qualified to resume his normal work duties. The plaintiff was last seen by Dr. Karr on June 16, 1965, just one week before the trial, when he complained of discomfort in the lower back. Dr. Karr found nothing wrong from a neurological standpoint. He reviewed x-rays taken at the time showing degenerative changes in the form of osteophytes, which the doctor stated were only a part of the aging process. Dr. Karr found no evidence of an aggravation of a pre-existing osteoarthritic condition and was of the firm opinion that plaintiff was physically able to return to work of the same type he had previously performed.
Dr. Haddad examined plaintiff on only one occasion, March 20, 1965, approximately three months before the trial. At that time plaintiff informed this physician he was unable to return to work because of low back pain. Dr. Haddad was unable to obtain a clear history from the plaintiff. However, he made an examination and had x-rays taken. The examination disclosed that, as a result of plaintiff's complaints of pain, there was some restriction in the range of motion in the back; he could not forward flex past forty degrees and could not carry through a full range of motion on reversal of the lordotic curve. The x-rays were compatible with degenerative arthritic changes of the lower back. The objective findings did not show any significant evidence of nerve injuries or irritation, nor were there any objective findings tending to show the injury and laminectomy had in fact aggravated the arthritic condition. Dr. Haddad was of the opinion that the decreasing range of motion of the back was due to plaintiff's osteoarthritis, a degenerative disease usually the result of many years of minute trauma which unquestionably was of long duration and existed at the time of the accident, and that the injury resulting in the ruptured disc, and the subsequent laminectomy, "probably did cause some furthering of the degenerative arthritis". However, he conceded that the only objective manner by which this could be shown to be true would be by a comparison of x-rays taken before the occurrence of the injury and after the performance of the laminectomy and that he had seen no x-rays taken before the injury. He was also of the opinion that as a result of the osteoarthritis plaintiff was physically unable to return to work of the same type he had previously performed.
*112 In this court counsel for plaintiff argue: (1) the judgment appealed from is erroneous and should be reversed for the reason that the testimony of Dr. Haddad is entitled to more weight than that of Dr. Karr; and (2) alternatively, this matter should be remanded for the purpose of obtaining additional expert medical testimony.
It is our settled law that there can be recovery of workmen's compensation where the accident aggravated a pre-existing physical condition and thus produced disability. Lewis v. Walton & Livaudais, Inc., La.App., 154 So.2d 75; Darden v. Henry E. Johnson, La.App., 145 So.2d 75; Thomas v. Aetna Casualty & Surety Co., La.App., 135 So.2d 505; George v. United Fruit Co., La.App., 131 So.2d 360; Thompson v. Bituminous Cas. Corp., La.App., 104 So.2d 248.
It is also settled that the plaintiff in a compensation case must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Russell v. Employers Mut. Liability Ins. Co. of Wis., 246 La. 1012, 169 So.2d 82; Burk v. Security Ins. Co. of New Haven, La.App., 170 So.2d 783; Hebert v. Your Food Processing & Warehouse Co., La.App., 170 So.2d 765; Page v. Home Indemnity Co., La.App., 168 So.2d 409; Lewis v. Walton & Livaudais, Inc., supra.
Plaintiff's first contention is based on the argument that the testimony of Dr. Haddad, an orthopedic surgeon, is entitled to greater weight than that of Dr. Karr, a neurosurgeon, because the medical question with which we are here concerned is within the field of orthopedic surgery rather than neurosurgery and therefore Dr. Haddad is better qualified to answer the question. We are unable to agree.
Neither physician was questioned or expressed an opinion as to which of the two medical specialties is properly concerned, or more concerned, with osteoarthritis of the lower spine and its aggravation by trauma. The only evidence in the record relative thereto is testimony by Dr. Haddad to the effect that neurosurgery generally deals with neurological diseases and their associated structures, the skull and the back, while orthopedic surgery generally is concerned with joint diseases and surgery of the bone. Dr. Haddad concedes that the two specialties are closely allied in some fields. And it occurs to us that this close alliance probably is true in the area we are now discussing. Certainly, the neurosurgeon who performs a laminectomy must have knowledge of the bone structure upon which he is operating and of the consequences of the operation in all its phases. From our reading of the record we are unable to conclude that the medical question before us falls primarily into the particular field of either of the two specialties. Nor can we say that by reason of his specialty the orthopedic surgeon was better qualified to express an opinion than was the neurosurgeon.
In addition, our courts frequently have held that in weighing medical opinions the testimony of the treating physician ordinarily should be accorded more weight than that of a physician who has made an examination for purposes other than for treatment. White v. Insurance Company of North America, La.App., 150 So.2d 908; Murphy v. American General Insurance Company, La.App., 122 So.2d 100; Anderson v. Peek, La.App., 102 So.2d 776. Here Dr. Haddad examined plaintiff on only one occasion while Dr. Karr performed the laminectomy and saw the plaintiff on many occasions prior to and during the course of his treatment and again shortly before the trial. We cannot hold that the trial court was in error in refusing to give greater weight to the medical opinion of Dr. Haddad.
Nor do we agree with appellant's argument that this case should be remanded for the purpose of obtaining additional expert medical testimony. It is true, of *113 course, that appellate courts have the right to remand a case for further trial in the interest of justice. And it is also true that, within reasonable limits, the plaintiff in a compensation case should be accorded the fullest opportunity to establish his claim in order to avoid injustice. Wade v. Calcasieu Paper Company, 229 La. 702, 86 So.2d 540; Jackson v. International Paper Company, La.App., 163 So.2d 362; Rawls v. Dixie Drilling Company, La.App., 161 So.2d 417. But any piece of litigation, compensation or otherwise, must come to some reasonable end. The mere fact that expert medical witnesses may be equally divided in their opinions is not, in itself, a sufficient reason to remand. Miller v. W. Horace Williams Co., La.App., 8 So.2d 734. And ordinarily a remand is not granted in compensation cases simply for the purpose of introducing cumulative evidence or evidence which was known, or which by the exercise of reasonable diligence should have been known, to the plaintiff and was available to him. Jackson v. International Paper Company, supra; Johnson v. Brown Paper Mill Co., La.App., 35 So.2d 774.
In the instant case the only issue concerning which plaintiff proposes to offer additional evidence on remand is the same issue which was before the trial court at the time of trial, i. e., whether plaintiff's injury and subsequent laminectomy aggravated his pre-existing osteoarthritic condition of the spine and thus produced permanent and total disability under the act. Although plaintiff argues to the contrary, we are unable to see how this evidence could be anything other than cumulative. And we are satisfied that the additional medical evidence plaintiff proposes to offer, apparently the testimony of other medical experts, was available to him prior to the trial. Under the circumstances presented here we are of the opinion that plaintiff is not entitled to have the case remanded for further trial.
The judgment appealed from is affirmed.
Affirmed.